SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| STATE OF ARIZONA, | ) | Arizona Supreme Court |
| | ) | No. CR-11-0314-PR |
| Respondent, | ) | |
| | ) | Court of Appeals |
| v. | ) | Division One |
| | ) | No. 1 CA-CR 10-0154 PRPC |
| PHIL OSUNA GUTIERREZ, | ) | |
| | ) | Maricopa County |
| Petitioner. | ) | Superior Court |
| | ) | No. CR1998-093163 |
| | ) | |
| | ) | |
| | ) | **O P I N I O N** |
| _____ | ) | |

Appeal from the Superior Court in Maricopa County
The Honorable George H. Foster, Judge

**VACATED AND REMANDED**
_____

Order of the Court of Appeals Division One
Filed Aug. 22, 2011
_____

WILLIAM G. MONTGOMERY, MARICOPA COUNTY ATTORNEY                Phoenix
        By   Diane Meloche, Appeals Bureau Chief
Attorneys for the State of Arizona

QUARLES & BRADY LLP                                           Phoenix
        By   Isaac M. Gabriel
Attorney for Phil Osuna Gutierrez
_____

**P E L A N D E R**, Justice

¶1        The issue presented is whether the superior court must hold an evidentiary hearing when the results of postconviction DNA testing conducted under A.R.S. § 13-4240 are favorable to the petitioner.  We hold that, although the court must hold a

hearing, an evidentiary hearing is not necessarily required.

## I.

¶2        In April 1998, four members of the West Side Guadalupe gang — Reyes, Coronado, Isidro, and Cupis — drove in Reyes's car to the east side of Guadalupe. They stopped at a party of a rival gang, East Side Guadalupe, and a rock-throwing altercation ensued. After Reyes was struck in the head, the four men left to "look for friends" and drove to the house of Phil Gutierrez, a fellow West Side Guadalupe gang member.

¶3        Gutierrez was not home. Coronado and Cupis left Reyes and Isidro and drove to a different party, where they found Gutierrez. The three left together in Reyes's car. Coronado drove, Gutierrez rode in the front passenger seat, and Cupis rode in the back seat. They returned to the east side and as they drove past the party, someone in the car fired a .22-caliber rifle out the passenger-side window at the partygoers. James Casias was shot in the head and later died from the wound.

¶4        After the shooting, a sheriff's deputy pursued Reyes's car. Coronado crashed the car into a pole, and he and Cupis fled. Gutierrez hit his head on the windshield during the crash and remained in the front passenger seat. He was arrested at the scene. Police found Cupis shortly thereafter and apprehended Coronado several days later. The murder weapon was never found. Near the scene of the crash, on the ground along

2

the route Cupis took when he fled, police found a black cap bearing the West Side Guadalupe insignia.

¶5         Gutierrez, Coronado, and Cupis were each charged with second-degree murder, and their trials were severed.  Before Gutierrez's trial, Cupis wrote a letter to the prosecutor claiming he had fired the shots and had lied to police when he had previously indicated that Gutierrez was the shooter.  Cupis attempted to plead guilty, but his counsel objected, arguing that Cupis's confession was contrary to the physical evidence and expressing his belief that Gutierrez was intimidating or coercing Cupis.  The prosecutor concurred that the physical evidence would not support Cupis's plea.  The court declined to accept Cupis's change of plea until after Gutierrez's trial to ensure he was not being coerced by Gutierrez.

¶6         At that trial, the State's theory was that Gutierrez had fired the gun.  The State elicited evidence that Gutierrez was riding in the front passenger seat when the shooting occurred and that testing of his hands at the crash scene revealed gunshot residue.  An expert testified that gunshot residue permeates the area within four feet of a gun upon firing.  Cupis was not tested for gunshot residue.

¶7         The State argued at trial that the shooting was gang-related, eliciting evidence that the initial rock-throwing altercation occurred between rival gangs, that Gutierrez's

3

friends looked for him after the altercation, that Gutierrez had a West Side Guadalupe tattoo and was a known gang member, and that the black cap had a West Side Guadalupe logo.

¶8 The State also presented Gutierrez's inconsistent statements to the police. Gutierrez did not testify, but the defense argued that he had gone with Cupis and Coronado to get beer for the party he was attending and that Cupis, from his position in the back seat, had fired the weapon. The defense also argued that Gutierrez was merely present and had no idea the shooting would happen.

¶9 The victim's sister had told police shortly after the shooting that she was sure Coronado was the gunman, but she testified at trial that she did not actually see the shooter and had assumed it was Coronado because he was riding in the passenger seat during the initial rock-throwing incident. Another witness testified that the gunman had a bandana over his face and was wearing a black cap.

¶10 The black cap found near the crash scene was admitted into evidence. Based on jurors' questions, the trial court asked the investigating detective whether that cap had been tested for hairs, and the detective responded that he did not observe any hairs. During closing, the prosecutor argued that it was unclear to whom the cap belonged, but that it showed gang affiliation.

4

¶11     The jury was instructed on second-degree murder and reckless manslaughter.  It was also instructed on accomplice liability and on Gutierrez's mere presence defense.  During deliberations, the jurors asked the court whether a second-degree murder conviction required them to find that Gutierrez was the gunman.  With the parties' consent, the court told the jurors that Gutierrez did not have to be the shooter if they found beyond a reasonable doubt that he was an accomplice of another person, and referred them to the accomplice liability and mere presence instructions.

¶12     The jury found Gutierrez guilty of second-degree murder.  Before sentencing, the same trial judge accepted Cupis's change of plea.  At Gutierrez's sentencing hearing, the court took judicial notice of Cupis's guilty plea and his earlier letter to the prosecutor.  Gutierrez was sentenced to nineteen years' imprisonment, the minimum sentence the court could have imposed, given Gutierrez's release status at the time of the offense, *see* A.R.S. § 13-604.02(A) (1998) (current version at § 13-708(A)), and the additional three years required for felony offenses committed with intent to further criminal conduct by a criminal street gang, *see* A.R.S. § 13-604(T) (1998) (current version at § 13-709.02).

¶13     Gutierrez's conviction and sentence were affirmed on appeal.  *State v. Gutierrez*, 1 CA-CR 00-0409 (Ariz. App. Apr.

5

17, 2001) (mem. decision). Gutierrez did not challenge the sufficiency of the evidence supporting his conviction or any jury instructions.

¶14    The judge who presided over Gutierrez's trial denied his first petition for postconviction relief in 2002. In that petition, Gutierrez argued the court erred by not allowing Cupis to plead guilty before his trial and by refusing to allow Cupis and Coronado to testify at his sentencing. The court found those issues precluded because Gutierrez did not raise them on direct appeal, but nonetheless rejected the arguments on the merits because the court had taken judicial notice of Cupis's confession and change of plea at Gutierrez's sentencing. The court also addressed Gutierrez's argument that Cupis was the shooter, stating that "[e]ven if the jurors had determined that [Gutierrez] was not the shooter, they would still have returned a guilty verdict based upon accomplice liability." Similarly, the court found Gutierrez's request for a judgment of acquittal precluded and "frivolous, as the State presented substantial evidence of [his] guilt."

¶15    In 2007, hair and a sweat stain were found on the black cap. Gutierrez successfully petitioned the superior court for DNA testing under § 13-4240(B). The test results revealed that the hair belonged to Cupis and that the stain was "a mixture of at least three individuals," including Cupis, but

6

excluding Gutierrez and Coronado. Gutierrez later filed a petition for postconviction relief and requested an evidentiary hearing. He argued that he was entitled to postconviction relief under Rule 32.1(e), contending that the newly discovered DNA evidence probably would have changed the verdict or sentence, and under Rule 32.1(h), contending that the DNA evidence demonstrated he was actually innocent. Gutierrez also asserted that his conviction could not be sustained on an accomplice liability theory because the State argued at trial only that he was the shooter, not an accomplice, and the evidence did not support a conviction as an accomplice. *See* A.R.S. §§ 13-301, -303.

¶16 After receiving the State's response to the Rule 32 petition and Gutierrez's reply, the superior court held a status conference. The judge indicated that he scheduled the conference because a hearing was statutorily required. When asked what he intended to show at an evidentiary hearing, Gutierrez indicated that the parties would likely stipulate to the entry of the DNA results and to the transcripts of Coronado's and Gutierrez's trials, but said that he would also seek to introduce Cupis's change of plea transcript and letters Coronado and Cupis had written identifying Cupis as the shooter, and that he might call Cupis, Coronado, and Gutierrez to testify.

7

¶17     In late 2009, the superior court denied postconviction relief in a ruling that stated:

> The parties stipulated that the newly discovered evidence, results of DNA testing, were not in dispute and that no further evidentiary hearing was necessary. The parties did, however, dispute the legal disposition of this matter based on that evidence.

The court found that "[t]he only matter[s] that could be considered newly discovered are the results of the DNA testing," not Cupis's repeated confessions. "Under the circumstances and given the quantum of evidence," the court concluded that the DNA evidence was not exculpatory because "at best it would only show that [Gutierrez] did not wear the cap." Although the State had argued at trial that Gutierrez was the shooter and a witness had testified that the shooter wore a black cap, the DNA results would not likely have affected the verdict, the court concluded, because there was substantial evidence of accomplice liability. Finally, the court noted that the sentencing judge expressly considered Cupis's confession letter and did not indicate that she had based her sentencing decision on a belief that Gutierrez was the shooter. The court of appeals summarily denied review.

¶18     We granted review to clarify the procedural requirements of § 13-4240(K), a recurring legal issue of statewide importance. We have jurisdiction under Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12–120.24 (2003).

8

¶19    We review de novo issues involving interpretation of statutes and court rules. *State v. Hansen*, 215 Ariz. 287, 289 ¶ 6, 160 P.3d 166, 168 (2007). But we review for abuse of discretion the superior court's denial of postconviction relief. *State v. Bennett*, 213 Ariz. 562, 566 ¶ 17, 146 P.3d 63, 67 (2006).

¶20    The legislature added § 13-4240 to the postconviction relief statutes in 2000, allowing those convicted of a felony to request DNA testing of evidence. 2000 Ariz. Sess. Laws, ch. 373, § 1 (2d Reg. Sess.). Section 13-4240 does not expressly set forth the legal grounds for postconviction relief or provide a specific remedy. Rather, the statute provides a means for obtaining new DNA evidence to possibly exonerate a defendant or to use in a postconviction relief proceeding.

¶21    Although § 13-4240 is part of the statutory scheme relating to postconviction relief, some of its provisions, and the interplay between § 13-4240 and Rule 32, are less than clear. Under § 13-4240(A), a felon "may request" DNA testing of relevant, available evidence. That subsection does not use the terms "petition" or "petitioner," but other provisions of § 13-4240 refer to the request for DNA testing as a petition. *See* § 13-4240(E) ("The court may appoint counsel for an indigent petitioner at any time during any proceedings under this

section."); § 13-4240(H) (imposing requirements on the state to preserve and keep inventories of evidence subject to DNA testing "[i]f a petition is filed pursuant to this section"); § 13-4240(K) (referring to test results that are favorable to the "petitioner"). Thus, in this case Gutierrez filed, and the superior court granted, a "petition" for DNA testing. Such a petition to request DNA testing differs from a petition for postconviction relief under Rule 32 and its statutory counterparts. *See* A.R.S. §§ 13-4234(C), -4235.

¶22    Section 13-4240(J), however, provides that "[i]f the results of the postconviction [DNA] testing are not favorable to the petitioner, the court shall dismiss the petition." The reference in subsection (J) to "the petition" is not clear, but it must mean something other than the petition for DNA testing, inasmuch as the results of DNA testing obviously will be known only after a petition for testing has been granted and the test performed. On the other hand, it is hard to see how a defendant could file a petition for postconviction relief under Rule 32.1(e) or (h) unless and until the DNA results are obtained.

¶23    Section 13-4240(K), central to the issue presented here, provides:

> Notwithstanding any other provision of law that would bar a hearing as untimely, if the results of the postconviction [DNA] testing are favorable to the petitioner, the court shall order a hearing and make any further orders that are required pursuant to this

10

article or the Arizona rules of criminal procedure. Thus, subsection (J) requires dismissal of DNA-related claims, without the need for any hearing, when the test results are unfavorable, while subsection (K) clearly requires a "hearing" when DNA test results are "favorable" to the defendant. And subsection (K) seems to contemplate that a court generally will consider any appropriate relief based on favorable DNA test results under the postconviction statutes, A.R.S. §§ 13-4231 to -4239, and Rule 32 of the Arizona Rules of Criminal Procedure.

**¶24** When DNA test results completely and indisputably exonerate the defendant of the crime at issue, § 13-4240(K) expressly provides that a trial court "shall order a hearing" and implies that, even absent any Rule 32 filing, the court may then vacate the conviction, order the charges dismissed, or afford other appropriate relief under the postconviction statutes or rules. Subsection (K) also requires a hearing when DNA test results are favorable but not necessarily or completely exculpatory. Section 13-4240, however, neither expressly states nor seems to contemplate what procedures apply in that latter scenario. Nor does the statute specify what type of hearing is required when, as here, the State does not contest "the accuracy, reliability, or admissibility of the DNA test

11

results," but opposes any claim for relief.[1] In that circumstance, as occurred here, the defendant may file a petition for postconviction relief in accordance with Rule 32, which then governs the proceedings, including any right to an evidentiary hearing.

¶25    A defendant commences a Rule 32 proceeding by filing a notice, followed by a petition. Rules 32.4(a), (c)(2), 32.5. Under Arizona's postconviction relief scheme, the superior court must determine whether the petition "presents a material issue of fact or law which would entitle the defendant to relief." Rule 32.6(c); *see also* § 13-4236(C). "A defendant is entitled to an evidentiary hearing when he presents a colorable claim, that is a claim which, if defendant's allegations are true, might have changed the outcome." *State v. Watton*, 164 Ariz. 323, 328, 793 P.2d 80, 85 (1990); *see also State v. Spreitz*, 202 Ariz. 1, 2 ¶ 5, 39 P.3d 525, 526 (2002). The court shall dismiss a petition that does not raise a colorable claim, but must "set a hearing within thirty days on those claims that present a material issue of fact or law." Rule 32.6(c); *see* A.R.S. § 13-4236(C).

¶26    As noted, when the results of court-ordered DNA

---

[1]    Section 13-4240 deals only with DNA-related topics. Therefore, if DNA testing procedures or facially favorable results are directly at issue, they may and should be addressed in a hearing, evidentiary or otherwise, under subsection (K).

testing are "favorable" to a defendant who then petitions for postconviction relief on that ground, § 13-4240(K) requires the court to order a hearing.  Section 13-4240(K) thus suggests that a "favorable" DNA test result is at least sufficient to avoid summary dismissal under Rule 32.6(c), and instead entitles the petitioner to a Rule 32 hearing.  This conclusion is supported by the fact that § 13-4240 permits a court to order DNA testing only if, at a minimum, "[a] reasonable probability exists that either [t]he petitioner's verdict or sentence would have been more favorable if the [DNA test] results . . . had been available at the trial," or that the "testing will produce exculpatory evidence."  § 13-4240(C)(1); *see also* § 13-4240(B).

¶27      The State contends that a court need conduct a Rule 32 hearing only when the State challenges the results or other aspects of the "favorable" DNA testing.  But § 13-4240(K) leaves no discretion to the court when the DNA test results are favorable to the petitioner.  *See* § 13-4240(K) ("[T]he court *shall* order a hearing." (emphasis added)).  Moreover, that statute also directs the court to "make any further orders that are required" under Arizona's postconviction relief framework, signifying that the "hearing" required by § 13-4240(K) is a Rule 32 hearing.  We thus conclude that when DNA test results ordered under § 13-4240 are favorable to the petitioner, those results alone entitle the petitioner to some type of Rule 32 hearing.

13

¶28     In this case, given the one witness's trial testimony that the shooter wore a black cap, the DNA test results are "favorable" to Gutierrez because they suggest that Cupis, not Gutierrez, wore the black cap during the shooting. "DNA results need not be completely exonerating in order to be considered favorable." *Haddock v. State*, 146 P.3d 187, 208 (Kan. 2006); *see People v. Dodds*, 801 N.E.2d 63, 67 n.2, 71 (Ill. App. 2003) (stating that "[n]egative or non-match results" do not necessarily "exclude the defendant as the perpetrator," but "the results were favorable, at least in part," to the defendant); *cf. Moore v. Commonwealth*, 357 S.W.3d 470, 487-88 (Ky. 2011) (holding DNA test results were not "favorable to the petitioner" when the tests demonstrated the presence of another's DNA but did not exclude the petitioner's DNA).

¶29     Because the DNA results were favorable to Gutierrez, he is entitled to a hearing under § 13-4240(K). The superior court, however, held only a status conference. The court did not notice a hearing or alert the parties to be prepared to argue the legal consequences of the DNA test results. The status conference did not meet the hearing requirement of § 13-4240(K).

¶30     Citing § 13-4240(K) and Arizona cases involving Rule 32 claims in non-DNA contexts, Gutierrez argues that the

14

favorable DNA test results alone create a colorable claim for relief, and therefore he is entitled to an *evidentiary* hearing. *See Watton*, 164 Ariz. at 328, 793 P.2d at 85; *State v. D'Ambrosio*, 156 Ariz. 71, 73, 750 P.2d 14, 16 (1988). We disagree. Subsection (K) does not mandate an evidentiary hearing. Nor does that statute or any case suggest that a colorable Rule 32 claim arises whenever a DNA test produces results favorable to a defendant.

¶31 The purpose of an evidentiary hearing in the Rule 32 context is to allow the court to receive evidence, make factual determinations, and resolve material issues of fact. *See State v. Krum*, 183 Ariz. 288, 292, 903 P.2d 596, 600 (1995) ("To obtain an evidentiary hearing, a petitioner must make a colorable showing that the [factual] allegations, if true, would have changed the verdict."); *State v. Schrock*, 149 Ariz. 433, 441, 719 P.2d 1049, 1057 (1986) ("Rule 32 has as its aim the establishment of proceedings to determine the facts underlying a defendant's claim for relief when such facts are not otherwise available. . . . When such doubts exist, a hearing should be held to allow the defendant to raise the relevant issues, to resolve the matter, and to make a record for review." (internal quotation marks and citations omitted)); *see also* Rule 32.1 cmt. ("The unified procedure of Rule 32 . . . [p]rovides for a full-scale evidentiary hearing on the record in order to limit

15

federal *habeas corpus* review to questions of law.").

**¶32** Significantly, § 13-4236(C) requires "a hearing . . . on those claims that present a material issue of fact *or law*" (emphasis added), but § 13-4238(A) and Rule 32.8(a) provide for an evidentiary hearing only "to determine issues of material fact." *See also* Rule 32.6 cmt. ("[I]f the court finds any colorable claim, it is required . . . to make a full *factual* determination before deciding it on its merits." (emphasis added)). Thus, when there are no material facts in dispute and the only issue is the legal consequence of undisputed material facts, the superior court need not hold an evidentiary hearing.[2] *See State v. Borbon*, 146 Ariz. 392, 399, 706 P.2d 718, 725 (1985) ("Rule 32 does not require the trial court to conduct evidentiary hearings based on mere generalizations and unsubstantiated claims that people exist who would give favorable testimony."). But, under § 13-4240(K), a court faced with favorable DNA test results, but no material issues of fact, must nonetheless hold a non-evidentiary hearing to permit the parties to argue why the petitioner should or should not be entitled to relief as a matter of law. The status conference

---

[2] In a sense, a hearing might be deemed "evidentiary" whenever the court receives or considers any evidence, including documents, recorded or transcribed testimony given in prior proceedings, affidavits, or other materials. We refer here, however, to evidentiary hearings in which witnesses testify in open court.

16

held here plainly was not such a hearing.

¶33        In summarily denying Rule 32 relief, the superior court correctly noted that the results of the DNA testing were undisputed, but mistakenly stated that the parties had stipulated that no evidentiary hearing was necessary. The record reflects no such stipulation. Indeed, Gutierrez suggested at the status conference that he intended to introduce evidence, in addition to the DNA test results, showing that he was not the shooter and did not know beforehand that a shooting would occur. He argued below that "the newly discovered DNA evidence, combined with the trial record and the confessions of Cupis and Coronado, demonstrates that Gutierrez is actually innocent of the crime for which he was convicted." Gutierrez also presented a 2009 declaration by Cupis, who not only repeated that he was the shooter and had initially lied to police, but also averred that, to his knowledge, "Gutierrez did not know that [Cupis] was going to conduct a drive-by shooting." Gutierrez also referred below to Cupis's testimony given at Coronado's trial. And, when asked at the status conference what evidence he planned to present in addition to the uncontested DNA test results, Gutierrez mentioned the transcripts of Cupis's change of plea, Coronado's trial, and the possible live testimony of Cupis, Coronado, and Gutierrez himself.

¶34        Gutierrez apparently concedes, as the court below

17

found, that the only newly discovered evidence was the DNA test result. Because the DNA test results alone did not entitle Gutierrez to postconviction relief, the superior court did not abuse its discretion in rejecting without an evidentiary hearing his Rule 32 claims when only that new evidence is considered.[3] But his postconviction claim, at least as to actual innocence under Rule 32.1(h), does not rest solely on the DNA evidence. The court did not expressly address, and apparently did not

---

[3]     Although the DNA test results in this case were favorable to Gutierrez, they by no means exonerated him. At most, those results tend to show only that he was not the shooter. Indeed, when the trial judge denied relief on Gutierrez's first Rule 32 petition in 2002, she found that the jury would have still found him guilty as an accomplice, despite Cupis's confessions as the shooter. And, as the superior court correctly observed in denying Gutierrez's post-DNA petition in 2009, he cannot now challenge, under the guise of a Rule 32 claim, the sufficiency of the trial evidence to support the jury's verdict. *See* Rule 32.1; *State v. Salazar*, 122 Ariz. 404, 406, 595 P.2d 196, 198 (App. 1979) ("Rule 32.1 defines the scope of the remedy available and specifies the only permissible grounds for relief. Insufficiency of the evidence . . . [is] not among them."), *overruled on other grounds by State v. Pope*, 130 Ariz. 253, 254-56, 635 P.2d 846, 847-49 (1981). Thus, Gutierrez's belated claim that "there is no evidence on the record supporting that [he] intended to aid or participate in *the specific crime* of murder" is not grounds for Rule 32 relief. Conversely, that the trial record reflects substantial evidence to support Gutierrez's conviction as an accomplice does not necessarily defeat his claims for postconviction relief under Rule 32.1(e) or (h). *Cf. State v. Hickle*, 133 Ariz. 234, 238, 650 P.2d 1216, 1220 (1982) (affirming grant of new trial based on newly discovered evidence of co-participant's perjury at trial, rejecting state's assertion that defendant's conviction should be sustained based on accomplice liability).

consider, most of Gutierrez's other proffered evidence.[4]  Nor did the court specifically address Gutierrez's actual innocence claim under Rule 32.1(h).

¶35     The superior court also cited Rule 32.2(a)(2) in finding that any attempt "to revisit and collaterally attack the issue of accomplice liability" is precluded because it was raised or raisable on direct appeal or in Gutierrez's first Rule 32 petition.  But the preclusion provisions in Rule 32.2(a) do not apply to claims based on newly discovered evidence under Rule 32.1(e) or actual innocence under Rule 32.1(h).  *See* Rule 32.2(b).  And, although Gutierrez might have failed to "set forth . . . the reasons for not raising [those] claim[s] in [his] previous petition," Rule 32.2(b), and to file a pre-petition notice, as Rule 32.4(a) requires, the court did not reject Gutierrez's post-DNA petition on those grounds.

¶36     For these reasons, we find it appropriate to remand the case to the superior court for further proceedings.  Because Gutierrez's statement about what additional evidence he planned to present was made at a status conference and the record contains no offer of proof, we cannot decide today whether any

---

[4]     Although the superior court acknowledged that portion of Cupis's 2009 declaration in which he again confessed to being the shooter, and found it was "not newly discovered," the court did not mention that the declaration, if credited, also tended to absolve Gutierrez of accomplice liability.

such additional evidence would either be admissible or, if taken as true, entitle Gutierrez to relief under Rule 32.1(e) or (h). *See* Ariz. R. Crim. P. 32.8(b), (c).  We leave those issues, including whether an evidentiary hearing is warranted, to the superior court in the first instance, to be resolved at the hearing that § 13-4240(K) mandates.  Finally, we express no opinion on whether Gutierrez has satisfied, or can meet, the procedural requirements of Rule 32.2(b).

**IV.**

¶37      For the reasons stated, we vacate the superior court's order and remand for further proceedings consistent with this opinion.

_____
A. John Pelander, Justice

CONCURRING:

_____
Rebecca White Berch, Chief Justice

_____
Andrew D. Hurwitz, Vice Chief Justice

_____
W. Scott Bales, Justice

_____
Robert M. Brutinel, Justice