IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**STATE OF ARIZONA,**
*Respondent,*

*v.*

**TRAVIS WADE AMARAL,**
*Petitioner.*

No. CR-15-0090-PR
Filed February 4, 2016

On Review from the Superior Court in Yuma County
The Honorable Lawrence C. Kenworthy, Judge
No. CR9218761
**AFFIRMED**

Memorandum Decision of the Court of Appeals, Division One
1 CA-CR 13-0502
Filed Feb. 12, 2015
**VACATED**

COUNSEL:

Jon R. Smith, Yuma County Attorney, Charles Platt (argued), Deputy
County Attorney, Yuma, Attorneys for State of Arizona

Michael A. Breeze, Yuma County Public Defender, Edward F. McGee
(argued), Deputy Public Defender, Yuma, Attorneys for Travis Wade
Amaral

Mark Brnovich, Arizona Attorney General, John R. Lopez IV, Solicitor
General, Lacey Stover Gard, Chief Counsel, Capital Litigation Section,
Tucson, Attorneys for Amicus Curiae Arizona Attorney General

JUSTICE BRUTINEL authored the opinion of the Court, in which CHIEF JUSTICE BALES, VICE CHIEF JUSTICE PELANDER, and JUSTICES TIMMER and BERCH (RETIRED) joined.

_____

JUSTICE BRUTINEL, opinion of the Court:

¶1 Travis Wade Amaral, then seventeen years old, pleaded guilty to first-degree murder and other charges and was sentenced to life in prison. We consider whether advances in juvenile psychology and neurology in the intervening twenty-two years support a "colorable claim" of newly discovered evidence requiring an evidentiary hearing on Amaral's petition for post-conviction relief. Because the sentencing court considered the distinctive attributes of Amaral's youth, we hold that Amaral did not present a colorable claim.

## I.    BACKGROUND

¶2 In 1993, Amaral pleaded guilty to two counts of first-degree murder and one count of attempted armed robbery for crimes committed when he was sixteen years old. Amaral was sentenced to a term of life imprisonment with the possibility of parole after twenty-five years for each of the murder convictions and to 7.5 years' imprisonment for attempted armed robbery. The sentences were ordered to run consecutively. Amaral must serve a minimum of 57.5 years before he is parole eligible.

¶3 Amaral claimed he committed the crimes at the direction of Greg Dickens, who served as a counselor at a placement center for violent juveniles where Amaral had previously lived. The crimes were committed while he was staying with Dickens. According to Amaral, Dickens suggested the robbery, gave him a loaded revolver, and told him to leave "no witnesses." Dr. Judith Becker, a clinical psychologist who interviewed Amaral before sentencing, opined that Dickens was a pedophile who was sexually abusing Amaral.

¶4 At Amaral's mitigation hearing, the defense presented testimony from his parents and Dr. Becker as to Amaral's mental health and maturity at the time of the murders and sentencing. The testimony highlighted Amaral's mental health issues, his immaturity, and Dickens' influence over him. Amaral's father testified that even though Amaral was seventeen years old at the time of sentencing, he had the maturity level of

a fourteen or fifteen year old. Dr. Becker opined that Amaral's maturity level was more like that of a thirteen or fourteen year old at that time. Further, she testified that Amaral suffered from attention deficit disorder and displayed intermittent explosive disorder, bipolar disorder, and conduct disorder. According to Dr. Becker, individuals with attention deficit disorder are impulsive and have difficulty controlling their behavior in certain circumstances. She also testified that this effect is more pronounced if, like Amaral, that individual is agitated and has a conduct disorder. Dr. Becker attributed Amaral's immaturity to his attention deficit disorder, the time he spent in institutions, the custody war waged by his parents, and Dickens' pedophilic relationship with him.

¶5        The trial judge considered this testimony during sentencing and determined that the sentences should run consecutively, stating:

> It should be noted, consecutive sentences have been imposed, not only because the statute in Arizona mandated consecutive sentences unless there are reasons for imposing concurrent sentences, but because I could find no reasons in mitigation, apart from your age, that would justify my imposing concurrent sentences, Mr. Amaral, in light of the circumstances surrounding these offenses, your very deliberate actions in them.

¶6        In 2012, Amaral filed a petition for post-conviction relief under Arizona Rule of Criminal Procedure 32. He claimed that recent scientific findings concerning juvenile psychology and neurology, which the United States Supreme Court had cited in holding that the Eighth Amendment bars certain sentences for juvenile offenders, were newly discovered material facts that warranted post-conviction relief under Rule 32.1(e). The trial court dismissed the petition, finding that Amaral had failed to present a material issue of fact that would entitle him to relief.

¶7        In denying relief on Amaral's ensuing petition for review, the court of appeals noted that "One of the requirements for a claim of newly discovered evidence is that 'the evidence must appear on its face to have existed at the time of trial but be discovered after trial.'" *State v. Amaral*, No. 1 CA-CR 13-0502, at *2 ¶ 8 (Ariz. App. Feb. 12, 2015) (mem. decision) (quoting *State v. Bilke*, 162 Ariz. 51, 52, 781 P.2d 28, 29 (1989)). The court held that Amaral did not present a colorable claim because the scientific

advancements in juvenile psychology and neurology did not exist at the time of sentencing. *Id.*

**¶8**        We consider whether these advances in juvenile psychology and neurology constitute newly discovered evidence that, if known at the time of Amaral's 1993 sentencing, probably would have changed his sentence. We have jurisdiction pursuant to article 6, section 5(3), of the Arizona Constitution.

## II.        DISCUSSION

**¶9**        We review a denial of a Rule 32 petition based on lack of a colorable claim for an abuse of discretion. *E.g.*, *State v. Gutierrez*, 229 Ariz. 573, 577 ¶ 19, 278 P.3d 1276, 1280 (2012); *State v. Bennett*, 213 Ariz. 562, 566 ¶ 17, 146 P.3d 63, 67 (2006). Rule 32.1(e) sets forth the requirements for obtaining post-conviction relief based on newly discovered evidence:

> e. Newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence. Newly discovered material facts exist if:
> (1) The newly discovered material facts were discovered after the trial.
> (2) The defendant exercised due diligence in securing the newly discovered material facts.
> (3) The newly discovered material facts are not merely cumulative or used solely for impeachment, unless the impeachment evidence substantially undermines testimony which was of critical significance at trial such that the evidence probably would have changed the verdict or sentence.

A defendant is entitled to an evidentiary hearing regarding a claim of newly discovered evidence if he or she presents a "colorable claim." *State v. Bilke*, 162 Ariz. at 52, 781 P.2d at 29. There are five requirements for presenting a colorable claim of newly discovered evidence:

> (1) the evidence must appear on its face to have existed at the time of trial but be discovered after trial;
> (2) the motion must allege facts from which the court could conclude the defendant was diligent in discovering the facts and bringing them to the court's attention;

4

(3) the evidence must not simply be cumulative or impeaching;
(4) the evidence must be relevant to the case;
(5) the evidence must be such that it would likely have altered the verdict, finding, or sentence if known at the time of trial.

*Id.* at 52–53, 781 P.2d at 29–30. The dispositive issue here is whether Amaral's petition alleged a "newly discovered material fact[]" that "probably would have changed" his sentence. Ariz. R. Crim. P. 32.1(e).

¶10 As a preliminary matter, we clarify the standard for entitlement to a Rule 32.8(a) evidentiary hearing on claims made under Rule 32.1(e). A defendant is entitled to relief if "newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence." Ariz. R. Crim. P. 32.1(e). Some of our case law, however, has suggested that a defendant presents a colorable claim, and thus is entitled to an evidentiary hearing, if the alleged facts "might" have changed the outcome. For example, with regard to a claim of ineffective assistance of counsel, we have stated that "[a] defendant is entitled to an evidentiary hearing when he presents a colorable claim [—] that is[,] a claim which, if defendant's allegations are true, *might* have changed the outcome." *State v. Watton*, 164 Ariz. 323, 328, 793 P.2d 80, 85 (1990) (citing *State v. Schrock*, 149 Ariz. 433, 441, 719 P.2d 1049, 1057 (1986)) (emphasis added). The use of "might" originated in *Schrock* as a misstatement of the standard described in a previous case. *Schrock*, 149 Ariz. at 441, 719 P.2d at 1057 (citing *State v. Jeffers*, 135 Ariz. 404, 427, 661 P.2d 1105, 1128 (1983) (stating a colorable claim is one that, if the defendant's allegations are true, *would* change the verdict)).

¶11 A standard based on what "might" have changed the sentence or verdict is inconsistent with Rule 32 and most of the case law. *E.g.*, *Gutierrez*, 229 Ariz. at 579 ¶ 31, 278 P.3d at 1282; *State v. Krum*, 183 Ariz. 288, 292, 903 P.2d 596, 600 (1995); *Jeffers*, 135 Ariz. at 427, 661 P.2d at 1128. The relevant inquiry for determining whether the petitioner is entitled to an evidentiary hearing is whether he has alleged facts which, if true, would *probably* have changed the verdict or sentence. If the alleged facts would not have probably changed the verdict or sentence, then the claim is subject to summary dismissal. Ariz. R. Crim. P. 32.6(c).

**¶12** This comports with the purpose of an evidentiary hearing in the post-conviction context. A Rule 32 evidentiary hearing allows "the court to receive evidence, make factual determinations, and resolve material issues of fact." *Gutierrez*, 229 Ariz. at 579 ¶ 31, 278 P.3d at 1282. Such an evidentiary hearing is useful only to the extent relief would be available under Rule 32—that is, the defendant presents a colorable claim. If the alleged facts, assumed to be true, would not provide grounds for relief, the court need not conduct an evidentiary hearing because those facts would not have changed the outcome. *See Jeffers*, 135 Ariz. at 427, 661 P.2d at 1128; *see also Gutierrez*, 229 Ariz. at 579 ¶ 32, 278 P.3d at 1282; Ariz. R. Crim. P. 32.6(c) (recognizing summary dismissal might be appropriate when "no remaining claim presents a material issue of fact or law"). Likewise, "when there are no material facts in dispute and the only issue is the legal consequence of undisputed material facts, the superior court need not hold an evidentiary hearing." *Gutierrez*, 229 Ariz. at 579 ¶ 32, 278 P.3d at 1282. It may simply determine whether the undisputed facts probably would have changed the verdict or sentence. *See Jeffers*, 135 Ariz. at 427, 661 P.2d at 1128; *State v. Richmond*, 114 Ariz. 186, 194, 560 P.2d 41, 49 (1976) (no evidentiary hearing required on defendant's claim of newly discovered evidence when his allegations, taken as true, would not have changed the verdict), *abrogated on other grounds by State v. Salazar*, 173 Ariz. 399, 416, 844 P.2d 566, 583 (1992).

**¶13** We turn to the *Bilke* requirements for a colorable claim under Rule 32.1(e). The first is that "the evidence must appear on its face *to have existed at the time of trial* but be discovered after trial." *Bilke*, 162 Ariz. at 52, 781 P.2d at 29 (emphasis added). Although this requirement is not explicit in the rule's text, we have long recognized that "Rule 32.1(e) has not expanded the law to relieve appellant from the consequences of a sentence because of facts arising after the judgment of conviction and sentencing." *State v. Guthrie*, 111 Ariz. 471, 473, 532 P.2d 862, 864 (1975). This Court has held that evidence arising from events occurring after the trial are not newly discovered material facts. *E.g., id.* (holding that rehabilitation efforts pending appeal were not newly discovered material facts because they arose after the conviction and sentencing).

**¶14** Amaral argues that this case is analogous to *Bilke* in that both concern a new understanding of conditions that existed at the time of trial. But *Bilke* differs from this case. Bilke was convicted of armed robbery, armed rape, armed kidnapping, and lewd and lascivious acts. *Bilke*, 162

6

Ariz. at 51, 781 P.2d at 28. Thirteen years after his conviction, he petitioned for post-conviction relief, claiming as newly discovered evidence that he had been recently diagnosed with post-traumatic stress disorder ("PTSD") from his prior military service. *Id*. at 51–52, 781 P.2d at 28-29. He claimed that although he had only been recently diagnosed, he had suffered from the disorder when he committed the crimes. *Id*. at 52, 781 P.2d at 29. Analyzing the five requirements, this Court held that Bilke had presented a colorable claim that newly discovered evidence existed. *Id*. at 53, 781 P.2d at 30. Bilke's PTSD was a newly discovered condition that existed at the time of trial but, through no fault of the defendant, was not diagnosed because it "was not a recognized mental condition at the time of his trial." *Id*.

**¶15** Applying *Bilke*, we conclude that Amaral failed to present a colorable claim. Amaral contends that the scientific findings concerning juvenile psychology and neurology underlying three United States Supreme Court decisions are newly discovered material facts. *See Miller v. Alabama*, 132 S. Ct. 2455 (2012) (holding mandatory life imprisonment without parole for juvenile offenders violates the Eighth Amendment prohibition on cruel and unusual punishment); *Graham v. Florida*, 560 U.S. 48 (2010) (holding mandatory life imprisonment without parole for juvenile offenders who did not commit homicide violates the Eighth Amendment); *Roper v. Simmons*, 543 U.S. 551 (2005) (holding the death penalty cannot be imposed on juvenile offenders because it violates the Eighth Amendment). Those opinions note scientific research describing behaviors commonly exhibited by juveniles and the reasons for those behaviors. Relying on this research and the decisions in *Roper* and *Graham*, *Miller* concludes that "the distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes." *Miller*, 132 S. Ct. at 2465. Further, in holding that *Miller* applies retroactively, the Court recently reiterated that "children are constitutionally different from adults in their level of culpability[.]" *Montgomery v. Louisiana*, No. 14–280, slip op. at 22 (U.S. Jan. 25, 2016).

**¶16** For the purpose of our analysis, we assume the facts alleged by Amaral are true. Thus, we assume that the advances in juvenile psychology and neurology described in the Supreme Court cases demonstrate that compared to adults, juveniles (1) act more impulsively, (2) overemphasize rewards and underemphasize consequences, (3) are more

susceptible to negative influences, (4) have less fixed personalities, and (5) are more likely to grow out of their risk taking behavior.

**¶17**     Even so, Amaral has failed to identify newly discovered material facts that probably would have altered his sentence. The advances in juvenile psychology and neurology offered by Amaral merely supplement then-existing knowledge of juvenile behavior that was considered at the time of sentencing. As noted by the United States Supreme Court in *Roper*, these scientific and sociological studies simply confirmed what was already known. 543 U.S. at 569 (noting that the "scientific and sociological studies respondent and his *amici* cite" simply confirm existing understandings of juvenile behavior). Although the research itself was conducted after Amaral's sentencing, the results of the research cannot constitute newly discovered material facts because juvenile behavioral tendencies and characteristics were generally known in 1993, and the trial judge contemplated Amaral's youth and attendant characteristics when he considered Amaral's age, immaturity, and personal idiosyncrasies at the sentencing hearing.

**¶18**     Unlike Amaral, Bilke suffered from a condition that existed at the time of the trial but was not yet recognized by mental health professionals and, consequently, could not have been diagnosed until years after the trial. Thus, at the time of sentencing, it would have been impossible for the trial judge in *Bilke* to have assessed the petitioner's actions in light of his disorder. In contrast, Amaral's juvenile status and impulsivity were known at the time of sentencing and were explicitly considered by the trial judge. Hence, his condition was not newly discovered. Therefore, and because the alleged facts would not have probably changed the result, the trial court did not abuse its discretion by denying Amaral's request for an evidentiary hearing.

**¶19**     The court of appeals correctly found that Amaral did not present a colorable claim, but it focused its decision on the fact that the scientific advances in juvenile psychology and neurology did not exist at the time of Amaral's sentencing. *State v. Amaral*, No. 1 CA-CR 13-0502, at *2 ¶ 8. The court of appeals is correct that the scientific advancements had yet to be discovered. But it is the condition, not the scientific understanding of the condition, that needs to exist at the time of sentencing. *See Bilke*, 162 Ariz. at 53, 781 P.2d at 30. Bilke's PTSD qualified as newly discovered evidence because the advancement of knowledge permitted the diagnosis

of a previously existing—but unrecognized—condition. Like Bilke's PTSD, Amaral's juvenile status existed at the time of sentencing. But the behavioral implications of Amaral's condition, in contrast to Bilke's, were recognized at the time of his sentencing; that our understanding of juvenile mental development has since increased does not mean that the behavioral implications of Amaral's juvenile status are newly discovered.

### III. CONCLUSION

¶20 We hold that Amaral did not present a colorable claim; consequently, he was not entitled to an evidentiary hearing. We vacate the decision of the court of appeals and affirm the trial court's order dismissing the petition for post-conviction relief.