IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

FELIPE PETRONE CABANAS, *Petitioner*,

*v.*

THE HONORABLE SUSANNA PINEDA, Judge of the SUPERIOR
COURT OF THE STATE OF ARIZONA, in and for the County of
MARICOPA, *Respondent Judge*,

STATE OF ARIZONA, ex rel. WILLIAM MONTGOMERY, Maricopa
County Attorney, *Real Party in Interest*.

No. 1 CA-SA 18-0099
No. 1 CA-SA 18-0119
(Consolidated)
FILED 11-29-2018

---

Petition for Special Action from the Superior Court in Maricopa County
No. CR1999-006656-A
The Honorable Susanna C. Pineda, Judge

**JURISDICTION ACCEPTED; RELIEF GRANTED**

---

COUNSEL

Maricopa County Public Defender's Office, Phoenix
By Tennie B. Martin, Kevin D. Heade, Nicholaus Podsiadlik
*Co-Counsel for Petitioner*

Vikki M. Liles, Attorney at Law, Phoenix
By Vikki M. Liles
*Co-Counsel for Petitioner*

Maricopa County Attorney's Office, Phoenix
By Karen Kemper
*Counsel for Real Party in Interest*

---

## OPINION

Presiding Judge Maria Elena Cruz delivered the opinion of the Court, in which Judge Jennifer B. Campbell and Judge James P. Beene joined.

---

**C R U Z**, Judge:

**¶1**        Felipe Petrone Cabanas seeks special action review of the superior court's rulings granting reconstruction of his 2002 sentencing proceeding and ordering him to disclose his mental health and medical records to the State as part of his post-conviction relief proceedings. We hold that Cabanas' defense of transient immaturity does not, by itself, place his mental health at issue such that the State is entitled to have access to his medical and mental health records over his objection.

**¶2**        We accept jurisdiction and grant relief, vacating the superior court's disclosure order. We also separately hold that no reconstruction hearing is necessary because the court's determination as to whether Cabanas' offense was the result of transient immaturity or irreparable corruption must be made based on evidence admitted at an upcoming evidentiary hearing, and not based on consideration of the previous sentencing judge's thought processes outside of his written orders. Accordingly, we vacate the order setting such hearing.

### FACTS AND PROCEDURAL HISTORY

**¶3**        In 2001, Cabanas pled guilty to first-degree murder for the killing of a police officer. Cabanas was 17 years, 8 months old at the time of the murder. During sentencing, the court considered Cabanas' age, level of intelligence, maturity, and other mitigating factors in a twenty-nine-page special verdict. The court specifically considered Cabanas' "juvenile impulsivity." Dr. Barillas, the psychologist that evaluated Cabanas prior to sentencing, presented mitigating evidence that Cabanas acted with "significant impulsivity." Determining that mitigation compelled against imposition of the death penalty, the court imposed a term of natural life in prison without the possibility of release.

2

¶4         In 2013, Cabanas initiated post-conviction relief proceedings in light of *Miller v. Alabama*, 567 U.S. 460 (2012).  The superior court denied Cabanas' request on the grounds that his natural-life sentence was not mandatory, "but instead was imposed after the sentencing court had considered [Cabanas'] age and other mitigating factors."  *State v. Cabanas*, 2017 WL 3599595, at *1, ¶ 5 (Ariz. App. Aug. 22, 2017) (mem. decision).  This court reversed, stating Cabanas was "sentenced when there was no requirement that a sentencing court distinguish between crimes that reflect 'irreparable corruption' as opposed to 'transient immaturity of youth,'" and thus, "[a]lthough the sentencing court considered [his] age in deciding on a sentence of natural life, that is insufficient to deny relief . . . based on *Miller*."  *Id.* at *2, ¶ 8.  As a result, we held Cabanas was "entitled to an evidentiary hearing to allow him the opportunity to establish that his crime reflected transient immaturity" and remanded for further proceedings consistent with our decision.  *Id.* at ¶¶ 8-9.

I.     Disclosure of Medical Records

¶5         At an October 2017 status conference, Cabanas stated his intention to call himself, Dr. Barillas, and Professor Steinberg as witnesses, and further stated that Steinberg would testify in general regarding the transient immaturity aspect of the juvenile brain.  Claiming the determination of transient immaturity requires analysis of the individual's current mental state compared to their juvenile evaluation, Cabanas stated he would call Dr. Barillas to testify to Cabanas' present-day maturity level to prove his crime reflected transient immaturity.  Under this anticipated presentation of the defense's case, Dr. Barillas was set to testify specifically about Cabanas, while Steinberg would testify about general characteristics associated with juvenile impulsivity.

¶6         In January 2018, the assigned judge recused herself, Cabanas' counsel withdrew, and the Public Defender's Office was appointed.  After Cabanas stated he would not call Dr. Barillas to testify but instead would perform a nationwide search to identify an appropriate mental health expert, the State requested the court order production of Cabanas' medical and mental health records for the State's expert to review.  The court granted the State's request for disclosure of all Arizona Department of Corrections and/or Corizon[1] reports dated February 20, 2002 through March 1, 2018, and all Maricopa County Correctional Health Services records from March 27, 1999 through March 4, 2002; June 25, 2015 through July 7, 2015; and January 16, 2018 through March 1, 2018.  Cabanas objected,

---

[1]     Corizon is a correctional facility healthcare provider.

arguing he had not noticed a mental health defense nor designated an expert; the court overruled the objection, but allowed Cabanas to submit redacted records to the court for review. The court did not establish any parameters for such redactions. Cabanas again challenged the order but submitted unredacted copies of the records for the court to review *in camera*. The court denied Cabanas' challenge and ordered all the documents produced.

¶7 Cabanas now seeks special action review from the superior court's order compelling disclosure of his medical and mental health records.

II. Reconstruction Hearing

¶8 Also discussed at the October 19 conference was the State's request for a reconstruction hearing on remand from this court's mandate in *Cabanas*, 2017 WL 3599595. In support of its request, the State stated that because it was unable to access the transcript of the 2002 sentencing, it wanted to call the sentencing judge to testify to reconstruct the record. The State argued that while the record contained the special verdict, there was no record of the original sentencing proceeding, and that if no transcript or court reporter notes were located, the court should reconstruct the original sentencing to complete the record. The State argued the record needed to be reconstructed because if Cabanas were to meet his burden under Arizona Rule of Criminal Procedure ("Rule") 32.8(c), the State would then have the burden of proving that the constitutional error was harmless beyond a reasonable doubt.

¶9 After argument on November 16, the court ordered a hearing to reconstruct portions of the record not included within the sentencing judge's twenty-nine-page special verdict, which could not otherwise be recreated by way of affidavit or declaration. The State filed a motion re-urging its request to have the original sentencing judge testify as a witness during a reconstruction hearing and the evidentiary hearing.

¶10 At the hearing on the State's motion, the State indicated it intended to call the sentencing judge to reconstruct the record as well as to rebut Cabanas' purported constitutional violation during the evidentiary hearing. The State intended to inquire whether the sentencing judge considered Cabanas' youth as a chronological fact or whether the judge considered the crime as being the product of youthful conduct. Previously-assigned counsel did not object and the court granted the State's request to call the former sentencing judge as a witness for the purpose of

reconstructing the sentencing record, as well as to provide testimony at the subsequent evidentiary hearing; however, before allowing the judge to testify, the court directed the parties to research whether the State could delve into the mental processes of the sentencing judge.

¶11 New defense counsel was appointed in January 2018 and moved to vacate the reconstruction hearing. Through April 2018, the State continued to argue that "[i]n order to address [transient immaturity], the trial court will need to look at what was considered at the original sentencing." The court heard renewed argument on April 16, 2018, denied Cabanas' motion to vacate the reconstruction hearing, and ordered a three-day evidentiary hearing set for the beginning of July 2018 to "absorb, evaluate, and determine whether or not there was transient immaturity," and to reconstruct the evidence provided at the time of sentencing. Cabanas also seeks special action relief from this ruling.

## DISCUSSION

I. Special Action Jurisdiction

¶12 Special action jurisdiction is proper when a party has no "equally plain, speedy, and adequate remedy by appeal." Ariz. R.P. Spec. Act. 1(a). We have discretion to accept special action jurisdiction in cases "involving a matter of first impression, statewide significance, or pure questions of law." *State ex rel. Pennartz v. Olcavage*, 200 Ariz. 582, 585, ¶ 8 (App. 2001).

### A. Disclosure of Medical Records

¶13 Cabanas argues compelled disclosure of all mental health and medical records, before he has placed his mental state at issue, violates his Fifth Amendment right against self-incrimination and Arizona's statutory psychologist-patient privilege. Ariz. Rev. Stat. ("A.R.S.") § 32-2085(A). The State claims Cabanas necessarily placed his mental health at issue by challenging his sentence on the grounds that his actions reflected "transient immaturity" and not "irreparable corruption." This case thus involves both a matter of first impression and a pure question of law. *See Ulibarri v. Superior Court*, 184 Ariz. 382, 384 (App. 1995) ("Existence of a privilege is a question of law, and a special action is the appropriate means of relief when the trial court orders disclosure of information that a party believes is privileged.").

¶14 Further, Cabanas argues his case is one of more than thirty cases pending in the superior court where defendants have requested

hearings to demonstrate their convictions were the result of "transient immaturity" and not "irreparable corruption," and that it is thus an issue of statewide importance likely to arise again. Accordingly, we accept special action jurisdiction.

B.      The Reconstruction Hearing

¶15      Special action jurisdiction is appropriate when the superior court has acted contrary to this court's mandate. *See Demand v. Gordon*, 106 Ariz. 475, 477 (1970). Cabanas argues the superior court has ordered reconstruction of the record in nonconformance with this court's mandate in *Cabanas*, 2017 WL 3599595, which required an evidentiary hearing. The State argues reconstruction is necessary to fully set forth a record for review of Cabanas' sentence. *See State v. Schackart*, 175 Ariz. 494, 499 (1993).

¶16      Because the superior court granted the State's request to reconstruct the original sentencing for use during the evidentiary hearing at issue, this case involves a challenge to the superior court's compliance with a mandate of this court. Similarly, the petition raises multiple purely legal issues that are capable of repetition and are of statewide importance; therefore, we accept special action jurisdiction.

II.      Disclosure of Mental Health and Medical Records

¶17      Cabanas argues his post-conviction petition did not place his mental state at issue and thus the court's order that he disclose his mental health and medical records to the State was in error. We agree.

¶18      Arizona's physician-patient privilege, A.R.S. § 13-4062(4), precludes a physician from testifying, absent the patient's consent, to any information acquired in attending the patient and extends from statements to medical records. *State v. Zeitner*, 244 Ariz. 217, 221, ¶ 16 (App. 2018).[2] Section 32-2085(A) applies the same privilege to psychologist-patient communications and records; however, such privilege is waived when a party places the relevant medical or mental state at issue. *See Bain v. Superior Court*, 148 Ariz. 331, 334 (1986) (stating a defendant waives the psychologist-patient privilege when they either (1) offer themselves as a

---

[2]      While not applicable to this post-decree proceeding, unless the defendant waives the privilege by asserting an insanity defense, Arizona's rules and statutes governing mental health examinations preserve the defendant's privilege against self-incrimination grounded in the Fifth Amendment prior to conviction. *State v. Hegyi*, 242 Ariz. 415, 417, ¶ 12 (2017).

witness and voluntarily testify with reference to privileged communications, or (2) place a particular condition at issue by means of a claim or affirmative defense).

¶19 In *Miller*, the U.S. Supreme Court held the Eighth Amendment prohibits imposition of mandatory life-without-parole sentences for juveniles without giving due consideration for the transient immaturity associated with their youth, because mandatory sentencing schemes that do not consider the characteristics of youth pose too great a risk that a defendant who acts with transient immaturity will be disproportionately punished. 567 U.S. at 479-80. In *Montgomery v. Louisiana*, the U.S. Supreme Court held *Miller* applied retroactively, and further held that even discretionary life-without-parole sentences were unconstitutional for defendants whose crimes reflect transient immaturity. 136 S. Ct. 718, 734 (2016) ("Even if a court considers a child's age before sentencing him . . . to a lifetime in prison, that sentence still violates the Eighth Amendment for a child whose crime reflects unfortunate yet transient immaturity.") (internal quotations and citations omitted).

¶20 In light of *Miller* and *Montgomery*, our supreme court clarified in *Valencia* that in the Rule 32 context, after they present a colorable claim for relief, defendants sentenced as juveniles to natural life are entitled to a Rule 32.8(a) evidentiary hearing "to establish, by a preponderance of the evidence, that their crimes did not reflect irreparable corruption but instead transient immaturity." *State v. Valencia*, 241 Ariz. 206, 210, ¶ 18 (2016).[3] If defendants can meet their burden and establish that their crimes reflected transient immaturity, then they will have established that their natural-life sentences are unconstitutional, thus entitling them to parole-eligible resentencing. *Id.*

¶21 Before imposing a natural-life sentence upon a juvenile, the court must consider: (1) evidence of juvenility's hallmark characteristics—immaturity, impetuosity, and a failure to appreciate risks and consequences; (2) the juvenile's family and home environment; (3) the

---

[3] At oral argument, Cabanas argued Rule 32.8(a) was inapplicable as the hearing is controlled by Rule 32.8(d) as a "further proceeding." We disagree. Cabanas' successful Rule 32.1(g) petition for post-conviction relief, *Cabanas*, 2017 WL 3599595, entitles him to an evidentiary hearing because he has made a colorable claim for relief based on *Miller*. *See Valencia*, 241 Ariz. at 210, ¶18 (relying on Rule 32.8(a) and *State v. Amaral*, 239 Ariz. 217, 220, ¶¶ 11-12 (2016) (discussing when an evidentiary hearing is required)).

circumstances of the offense, including the extent the juvenile's participation in the conduct and the way that familial and peer pressures may have affected them, and whether substance abuse played a role; (4) evidence as to whether the incompetencies of youth prevent the juvenile from being charged with a lesser offense; and (5) evidence bearing on the possibility of rehabilitation. *Miller*, 567 U.S at 477-78.

¶22 But nothing in the line of cases from *Miller* through *Valencia* supports the proposition that a defendant who challenges his natural-life sentence with *Miller* necessarily places his or her mental state at issue. *Miller* implicates the sentencing court's consideration of whether the juvenile's crime reflects transient immaturity based on the diminished culpable state of juveniles, but not necessarily his mental state as reflected in mental health records or medical records.[4] 567 U.S. at 470-74. While the *Miller* Court noted its holding resulted from studies and psychological developments, the object of consideration is the juvenile's "moral culpability," *id.* at 471-72, not mental status.

¶23 The State cites *Kansas v. Cheever* and *State v. Schackart* to argue that Cabanas has placed his mental state at issue. In *Cheever*, the U.S. Supreme Court upheld the admission of a court-ordered psychiatric evaluation on rebuttal, where the defendant presented a voluntary-intoxication defense and called an expert, whose own evaluation relied on the court-ordered psychiatric evaluation, to testify on his behalf. 571 U.S. 87, 91-97 (2013). The defendant's "psychiatric evidence concerned his mental status because he used it to argue that he lacked the requisite mental capacity to premeditate," and thus the Fifth Amendment did not bar the State from using the court-ordered psychiatric evaluation to rebut the defendant's voluntary-intoxication defense. *Id.* at 96-97. Here, no affirmative defense was presented—only the claim that at the time of sentencing, Cabanas' crime did not reflect irreparable corruption: an evaluation that does not turn on his mental ability to premeditate or other "mental status," *id.*, but on the aspects of the crime and his level of maturity at that time.

¶24 In *State v. Druke*, a special action case, the court of appeals reviewed whether the superior court could grant the State's request to appoint a mental health expert to examine the accused where the defendant

---

[4] The State conceded at oral argument that Cabanas could challenge each of the *Miller* factors without relying on mental health or medical records. Though he may choose to rely upon such records, we agree he need not.

did not raise an insanity defense, but instead intended to present expert testimony pertaining to his mental condition to negate the element of intent. 143 Ariz. 314, 316 (App. 1984). The court of appeals held the State was entitled to a fair opportunity to present its evidence and rebut the evidence of the defendant, because the defendant had placed his mental state at issue. *Id.* at 318. On review, the Arizona Supreme Court then held that ordering the defendant to submit to a mental examination did not violate his privilege against self-incrimination because he had "opened the door" to an examination by the State's expert. *Schackart*, 175 Ariz. at 500-01.

**¶25** We find the above cases distinguishable, as each turned on the right to records or examination after mental state is first placed at issue by the defendant. Relying on juvenile characteristics and claiming transient immaturity does not *ipso facto* equate to a mental health defense, nor would it negate an element of the crime. The fair-opportunity rationale compelling the *Cheever*, *Druke*, and *Schackart* decisions is absent here. The reciprocal rights of discovery established by the Arizona Rules of Criminal Procedure were intended to further the concept that a defendant is not entitled to an unfair advantage in the presentation of his defense. *Druke*, 143 Ariz. at 318.[5] No such advantage would arise here by allowing Cabanas the opportunity to establish transient immaturity without the use of expert testimony or other clinical reference to his mental health. We hold that until Cabanas relies on such records or otherwise places his mental status at issue, the State is not entitled to disclosure of his mental health records or to a mental health evaluation. We vacate the court's order as premature.

III.    The Order Compelling Disclosure Is Overbroad

**¶26** In light of *State v. Valencia*, this court held that Cabanas was entitled to an evidentiary hearing to allow him the opportunity to establish that his crime reflects transient immaturity. *Cabanas*, 2017 WL 3599595, at *2, ¶ 8. The State argues that because the original sentencing transcripts are lost, it is entitled to reconstruct the original hearing. The State further argues reconstruction is necessary to complete the record for reference

---

[5]    While Rule 15 applies to the trial stage, not to post-conviction relief proceedings, *Canion v. Cole*, 210 Ariz. 598, 599, ¶ 9 (2005), we nevertheless find the reciprocal-right-of-discovery rationale applicable. The *Valencia* hearing (1) grants the petitioner the opportunity to have the court determine an issue of material fact, Rule 32.8(a); (2) is part of the original criminal action, Rule 32.3; (3) applies the Arizona Rules of Evidence, Rule 32.8(b); and (4) requires the court to make specific findings of fact and state its conclusions of law, Rule 32.8(d)(1).

during the evidentiary hearing. Cabanas argues reconstruction is inappropriate, redundant to the purpose of the evidentiary hearing, and violates this court's mandate. This court reviews whether the superior court has complied with the appellate court's mandate *de novo*. *In re Marriage of Molloy*, 181 Ariz. 146, 149 (App. 1994).

### A. Whether a Harmless Error Burden Applies

**¶27** Intertwined in the State's argument for reconstruction and questioning the sentencing judge during the evidentiary hearing is its belief that Rule 32.8 imposes a burden on the State to establish harmless error if the defendant meets his burden showing his sentence was unconstitutional. *See* Rule 32.8(c). The State's belief is mistaken.

**¶28** *Miller* and *Montgomery* hold that a natural-life sentence imposed on a juvenile for a crime reflecting transient immaturity is categorically unconstitutional. *Valencia*, 241 Ariz. at 209-10, ¶¶ 16-18. It is the imposition of a life sentence upon a youth whose crime reflects transient immaturity which violates the Eighth Amendment, not the sentencing court's consideration of age-related factors. *Id.* at 210, ¶ 17 (citing *Montgomery*, 136 S. Ct. at 736) ("*Montgomery* noted that '*Miller* did not require trial courts to make a finding of fact regarding a child's incorrigibility,' but instead held that imposing a sentence of life without parole on a 'child whose crime reflects transient immaturity' violates the Eighth Amendment.").

**¶29** The *Valencia* hearing thus operates as an eligibility determination: if Cabanas meets his burden then he will have established that his natural-life sentence is unconstitutional, thus entitling him to resentencing. *Valencia*, 241 Ariz. at 210, ¶ 18; *Montgomery*, 136 S. Ct. at 734 (stating *Miller* "rendered life without parole an unconstitutional penalty for a class of defendants because of their status—that is, juvenile offenders whose crimes reflect the transient immaturity of youth") (internal quotations and citations omitted). Though the State typically carries the burden to rebut a constitutional violation by showing it was harmless per Rule 32.8(c), it cannot prove that the failure to consider the *Miller*-type factors was harmless here; if Cabanas is successful, then the unconstitutional life sentence cannot stand.

**¶30** To the extent the State relies on harmless error to support the need for reconstruction, that argument fails. The superior court is limited by our mandate to decide the material issue presently before it: whether Cabanas' crime reflected transient immaturity or irreparable corruption. It

is not tasked with deciding whether the previous sentence should stand, nor may it base its decision on considerations by the previous sentencing judge. *See Phillips v. Clancy*, 152 Ariz. 415, 418-21 (App. 1986) (discussing the impropriety of a judge testifying how he would have ruled had a circumstance or factor been different); *In re Aubuchon*, 233 Ariz. 62, 69-70, ¶ 34 (2013) (discussing the impropriety of probing into the mental processes engaged in by a judge).[6]

### B. Need for Reconstruction

**¶31** The State argues Rule 31.8(f) allows reconstruction of a portion of the record on appeal because the original sentencing transcript is unavailable. *See, e.g.*, *Schackart*, 175 Ariz. at 497-98. However, the current Rule 32.8 proceeding is a post-conviction relief petition and subsequent evidentiary hearing to determine whether Cabanas' crime reflected transient immaturity, not a direct appeal—thus, Rule 31.8 is inapplicable. *See* Rule 32.3(a) (discussing the nature of a post-conviction relief proceeding and its relation to other remedies); *see also State v. Gutierrez*, 229 Ariz. 573, 579, ¶ 32 (2012) ("Rule 32.8(a) provide[s] for an evidentiary hearing only to determine issues of material fact."). More to the point, the superior court is not tasked with reviewing a previous court decision for error and thus need not review the previous transcript. *See Schackart*, 175 Ariz. at 499, 503 (vacating death sentence and ordering new sentencing hearing based on a finding that the sentencing transcript was inadequate given the broad scope of the court's obligation to independently review defendant's death sentence); *State v. Hart*, 110 Ariz. 55, 57 (1973) (remanding for a new trial where appellant could not make first appeal without transcripts which were unavailable by no fault of appellant).

**¶32** The State claims "[r]econstruction will allow this Court to hear the facts and circumstances of [Cabanas'] crimes." The State's recited purpose of reconstruction is redundant to the evidentiary hearing. To the extent the superior court on remand seeks to "absorb, evaluate, and

---

[6] The State argues that calling the sentencing judge to testify is necessary to complete the record; but a judge may be called upon to give evidence, if at all, only in "instances in which there is no other reasonably available way to prove the facts sought." *In re Peasley*, 208 Ariz. 27, 34-35, ¶ 30 n.14 (2004) (citation omitted). That is not the case here, as the State conceded during oral argument that it has all other records of the original sentencing, including the exhibits, list of witnesses, and the original sentencing judge's detailed twenty-nine-page special verdict. The only missing portion is the transcript.

determine whether . . . there was transient immaturity," it must do so during the evidentiary hearing, within the parameters established in *Miller*, *Montgomery*, *Valencia*, and this decision. We therefore hold that the superior court erred when it ordered a reconstruction hearing.

¶33        The superior court retains discretion to admit relevant evidence during the evidentiary hearing tending to prove or disprove that Cabanas' crime reflected transient immaturity, Ariz. R. Evid. 401-403, and make necessary factual findings and conclusions of law pursuant to Rule 32.8.

## CONCLUSION

¶34        For the foregoing reasons, we accept special action jurisdiction and grant relief. The superior court's order requiring disclosure of Cabanas' medical and mental health records is vacated. The court's order granting reconstruction and permitting the State to call the sentencing judge to testify is also vacated, and we remand for compliance with this court's previous mandate and this decision.



AMY M. WOOD • Clerk of the Court
FILED:  AA