IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

---

**THE STATE OF ARIZONA,**
*Appellee,*

*v.*

**DAVID JOSEPH DUFFY,**
*Appellant.*

---

No. CR-19-0386-PR
Filed May 17, 2021

---

Appeal from the Superior Court in Cochise County
No. CR201700136
The Honorable James Conlogue, Judge (Retired)
**REVERSED AND REMANDED**

---

Opinion of the Court of Appeals, Division Two
2 CA CR-2018-0071
Filed November 1, 2019
**AFFIRMED**

---

COUNSEL:

Mark Brnovich, Arizona Attorney General, Brunn (Beau) W. Roysden III,
Solicitor General, Linley Wilson, Chief Counsel, Joshua C. Smith (argued),
Assistant Attorney General, Phoenix, Attorneys for State of Arizona

Daniel J. DeRienzo (argued), Law Office of Daniel J. DeRienzo, PLLC, Prescott Valley, Attorney for David Joseph Duffy

Carol Lamoureux (argued), Law Office of Hernandez & Hamilton, PC, Tucson, Attorneys for Amicus Curiae Arizona Attorneys for Criminal Justice

_____

JUSTICE BOLICK authored the Opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, and JUSTICES LOPEZ, BEENE, and MONTGOMERY joined. [*]

_____

JUSTICE BOLICK, Opinion of the Court:

¶1        In this case we hold that when a trial court is advised of a potential conflict arising from an attorney's representation of a co-defendant, it must conduct an independent inquiry to confirm that the defendant's Sixth Amendment right to conflict-free counsel was waived knowingly and voluntarily. Critically, to satisfy its duty, the court must do more than simply credit the attorney's assurances that the defendants had common defenses and waived any conflict.

## BACKGROUND

¶2        In January 2017, a police sergeant monitoring highway traffic was alerted to a nearby SUV that was driving suspiciously close to another vehicle. The sergeant found and pulled over the SUV after observing that it was speeding and changing lanes abruptly.

_____

[*] Although Justice Andrew W. Gould (Ret.) participated in the oral argument in this case, he retired before issuance of this opinion and did not take part in its drafting.

¶3          The SUV was driven by defendant David Joseph Duffy with co-defendant Dora Matias in the passenger seat.  During the traffic stop interview, the sergeant noticed burlap-wrapped bundles in the back seat, which he suspected contained marijuana.  He then placed Duffy and Matias under arrest.  After testing, the bundles were found to contain over 240 pounds of marijuana.

¶4          In a separate interview, Matias initially confessed that she had picked up the marijuana and expected to be paid for doing so.  But she maintained that Duffy did not know about the transaction and was merely driving her.  Duffy also claimed that he was unaware of plans to pick up the drugs, explaining that any discussion he overheard was in Spanish, a language he did not understand.  Matias later retracted her confession.

¶5          A grand jury charged each defendant with conspiracy, possession and transportation of marijuana for sale, and unlawful possession of drug paraphernalia.  At Duffy's arraignment, the prosecutor noted his "real concern about one attorney representing both codefendants in a case where there [are] obviously competing defenses."  At a later hearing on the issue, the prosecutor repeated that "I have an obligation to protect the rights of the defendants" and "I take that obligation seriously." More specifically, he warned of possible "competing interests" because "there is at least a potential for adverse defenses."

¶6          Defense counsel dismissed these concerns, replying that there was "no cognizable issue" as to joint representation of the two defendants because they had "essentially . . . a common defense agreement" and signed a waiver of potential conflict after being adequately advised of their rights.

¶7          The court made no further inquiry and did not address the defendants.  The judge stated that "[i]t appears that the defendants have been fully advised with regard to this situation," and that "I will defer to [defense] counsel.  I am required [to] do that in any event, but I would, even if not required."

¶8          The jury ultimately convicted both defendants on all counts. The court sentenced Duffy to three concurrent prison terms, the longest of which was six years.

3

**¶9** In a split decision, the court of appeals vacated Duffy's conviction and remanded for a new trial. The court rejected the State's argument that the appeal was premature, holding that Duffy could raise on direct appeal the adequacy of the trial court's inquiry into 1) possible conflict presented by joint representation of the two defendants and 2) whether Duffy waived the conflict in a knowing and voluntary manner. *State v. Duffy*, 247 Ariz. 537, 542 ¶¶ 7–8 (App. 2019). The panel majority held that the joint representation presented an actual conflict that violated Duffy's Sixth Amendment right to conflict-free representation. *Id.* at 550 ¶ 36.

**¶10** We granted review on both the direct appeal and Sixth Amendment questions because they present recurring issues of statewide importance. We consider questions of law de novo, *Ansley v. Banner Health Network*, 248 Ariz. 143, 147 ¶ 8 (2020), and have jurisdiction pursuant to article 6, section 5, clause 3 of the Arizona Constitution.

**ANALYSIS**

**¶11** The first question before us is whether a defendant may raise this issue by direct appeal or if he may only do so through a Rule 32 post-conviction relief proceeding. *See* Ariz. R. Crim. P. 32. The court of appeals observed that challenges to ineffective counsel must be raised in a Rule 32 proceeding but distinguished Duffy's challenge as arising from the *trial court's* failure to protect his constitutional right to conflict-free counsel, which can be raised directly. *Duffy*, 247 Ariz. at 544 ¶ 15; *see also, e.g.*, *State v. Tucker*, 205 Ariz. 157, 162 ¶ 23 (2003) (considering such issues on direct appeal).

**¶12** Although this issue was argued by the parties below, the State now concedes that "unlike a claim that an attorney was ineffective brought pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984), there is generally a sufficient record on direct appeal to determine whether a trial court adequately protected a defendant's Sixth Amendment right to conflict-free counsel." We agree that the narrow issue of whether the trial court adequately ensured the defendant's right to conflict-free counsel may be

raised on direct appeal. *See, e.g.*, *State v. Moore*, 222 Ariz. 1, 16 ¶¶ 81–83 (2009); *Tucker*, 205 Ariz. at 162–64 ¶¶ 19–33.

¶13 The second issue before us is whether the trial court adequately confirmed that Duffy waived his right to conflict-free counsel. The Sixth Amendment guarantees an accused the right to assistance of counsel in all criminal proceedings. U.S. Const. amend. VI. Among counsel's "basic duties" is "to avoid conflicts of interest." *Strickland*, 466 U.S. at 688 (citing *Cuyler v. Sullivan*, 446 U.S. 335, 346 (1980)).

¶14 Representation of multiple criminal defendants by the same attorney sometimes may be strategically warranted, but it raises conflict risks. *See, e.g.*, *Wheat v. United States*, 486 U.S. 153, 159 (1988) (recognizing that "multiple representation of criminal defendants engenders special dangers of which a court must be aware"). These risks alone cannot sustain a challenge, for "multiple representation does not violate the Sixth Amendment unless it gives rise to a conflict of interest." *Cuyler*, 446 U.S. at 348. Thus, "[a]bsent special circumstances," trial courts may assume that multiple representation entails no conflict and that the client knowingly accepts such risks. *Id.* at 346–47. Ordinarily, an attorney representing multiple defendants is in the best position, consistent with ethical obligations, to assess whether a risk of conflict exists and that the defendants wish to proceed regardless. *Holloway v. Arkansas*, 435 U.S. 475, 485 (1978). Thus, "[u]nless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry." *Cuyler*, 446 U.S. at 347.

¶15 The Court has also recognized that a defendant may waive the Sixth Amendment right to conflict-free counsel. *Holloway*, 435 U.S. at 483 n.5. That is because the purpose of the Sixth Amendment guarantee is to grant a right rather than impose an obligation, and therefore a defendant may waive the right if "he knows what he is doing and his choice is made with eyes open." *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942). But "[w]hile an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court." *Johnson v. Zerbst*, 304 U.S. 458, 465 (1938). "This protecting duty imposes the serious and weighty responsibility upon the trial judge of

determining whether there is an intelligent and competent waiver by the accused." *Id.*

**¶16** In the multiple representation context, to "establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler*, 446 U.S. at 348. Once that predicate is established, a defendant need not establish prejudice, for "unconstitutional multiple representation is never harmless error." *Id.* at 349 (citing *Glasser v. United States*, 315 U.S. 60, 76 (1942)).

**¶17** Trial courts have broad latitude in conducting the requisite inquiry into conflict and waiver. *See, e.g.*, *Johnson*, 304 U.S. at 464 ("The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."); *Wheat*, 486 U.S. at 163 (according trial courts "substantial latitude").

**¶18** Even so, we cannot approve the trial court's judgment in this case. Although it was on notice of possible conflict, it deferred to defense counsel's assurances and failed to conduct *any* meaningful inquiry into the conflict. Recognizing his duty to serve the ends of justice,[1] the prosecutor signaled his concern about multiple representation "in a case where there [are] obviously competing defenses." At a subsequent hearing, the prosecutor repeated those concerns, explaining that "there is at least a potential for adverse defenses," and that "there are circumstances under which it's inappropriate to even consider a waiver of the conflict." Defense counsel responded that the two defendants shared a common defense and that Duffy had signed a waiver. Without further inquiry or addressing

---

[1] *See In re Martinez*, 248 Ariz. 458, 463 ¶ 8 (2020) ("Prosecutors' unique role in the justice system is recognized in ER 3.8, 'Special Responsibilities of a Prosecutor,' which states that '[a] prosecutor has the responsibility of a minister of justice and not simply that of an advocate,' and has the duty to 'see that the defendant is accorded procedural justice, that guilt is decided upon the basis of sufficient evidence, and that special precautions are taken to prevent and to rectify the conviction of innocent persons.'").

Duffy directly, the trial court approved joint representation, finding Duffy had been "fully advised" and concluding that "I will defer to counsel.  I am required [to] do that in any event, but I would, even if not required."

**¶19**       If the trial court believed it was required to defer to defense counsel, or even permitted to do so once the court was on notice of possible conflict, it was mistaken.  As numerous United States Supreme Court decisions have emphasized, once the court is advised that a possible conflict exists, it must engage in an independent inquiry to determine whether the waiver was knowing and voluntary.  "[T]rial courts, when alerted by objection from one of the parties, have an independent duty to ensure that criminal defendants receive a trial that is fair and does not contravene the Sixth Amendment." *Wheat*, 486 U.S. at 161; *see also Holloway*, 435 U.S. at 484 (holding that where a probable conflict of interest was brought to the court's attention, the trial court deprived defendant of assistance of counsel when it "failed . . . to take adequate steps to ascertain whether the risk was too remote to warrant separate counsel"); *Glasser*, 315 U.S. at 71 (holding it is a Sixth Amendment violation to appoint counsel to represent multiple defendants after "the possibility of . . . inconsistent" defenses was "brought home to the court").

**¶20**       The prosecutor's concerns here placed the trial court on notice of a possible conflict and triggered the duty of independent inquiry.  *See Wood v. Georgia*, 450 U.S. 261, 272–73 (1981) (observing that "[a]ny doubt as to whether the court should have been aware of the problem is dispelled by the fact that the State raised the conflict problem explicitly and requested that the court look into it").  That inquiry requires the court to ascertain the nature of the possible conflict, whether the conflict would prevent the assertion of credible independent defenses, and whether the defendant was aware of the conflict risk and its ramifications and nonetheless knowingly waived the Sixth Amendment right to conflict-free counsel.  *Id.* at 273–74.

**¶21**       As the Supreme Court has instructed, "[i]n those cases where the potential conflict is in fact an actual one, only inquiry will enable the judge to avoid all possibility of reversal by either seeking waiver or replacing a conflicted attorney." *Mickens v. Taylor*, 535 U.S. 162, 173 (2002).  The best way for the court to determine whether a waiver is knowing and voluntary is to conduct a colloquy with defendants, which trial courts often

do in other contexts involving waiver of constitutional rights. *Cf. State v. Cornell*, 179 Ariz. 314, 323–24 (1994) (involving colloquy with defendant about the dangers of his decision to represent himself). In the colloquy, the court should advise defendants of the right to conflict-free counsel, make defendants aware of the identified conflict, explain possible ramifications of the conflict, advise defendants of the right to confer about the conflict with different counsel, and ask if defendants understand the risk and wish to proceed with counsel regardless.

**¶22** Although such a colloquy is not necessary under Arizona law to establish waiver in every case, it is a prophylactic measure to ensure that a waiver is knowing and voluntary and thus conforms to the Sixth Amendment. Indeed, in federal cases, such a colloquy is required in all cases involving multiple representation, in which the court "must personally advise each defendant of the right to the effective assistance of counsel." Fed. R. Crim. P. 44(c)(2). As the concurring judge in the court of appeals aptly noted, a colloquy with the defendant offers the added advantage of avoiding intrusion into the attorney-client relationship or trial strategy, for it focuses simply on whether the defendant understood the dangers of joint representation and knowingly and voluntarily waived the right to conflict-free counsel. *Duffy*, 247 Ariz. at 551 ¶¶ 43–44 (Eppich, J., specially concurring).

**¶23** Here, had the court conducted the requisite inquiry, it likely would have discovered the nature of the conflict and how it would have adversely affected Duffy. The Supreme Court has noted that "in a case of joint representation of conflicting interests[,] the evil . . . is in what the advocate finds himself compelled to *refrain* from doing." *Holloway*, 435 U.S. at 490. As the court of appeals observed, joint representation prevented Duffy's counsel from emphasizing Matias' involvement in the crime or exploring a plea bargain for Duffy, possibly in exchange for testimony against Matias. *Duffy*, 247 Ariz. at 549–50 ¶ 35; *see State v. Martinez-Serna*, 166 Ariz. 423, 425–26 (1990) (finding actual conflict where the defendant "may well have been able to present a more plausible defense but for his counsel's conflict," such as a plea bargain or attempting to place blame on the co-defendant). Rather, the joint representation forced Duffy to rely on the implausible theory that both defendants were "set up," which contradicted statements Matias made to the police on the night of the arrest

and other evidence. *Duffy*, 247 Ariz. at 549 ¶ 35. For that reason, unless Duffy was aware of the nature of the conflict and yet chose to waive his right to conflict-free counsel, the joint representation violated that right.

**¶24** Based on this record, we cannot conclude that Duffy knowingly and intelligently waived the right to conflict-free counsel. The court did not look behind counsel's assurance that Duffy was advised of the dangers of joint representation, nor did it take independent steps to satisfy itself that Duffy chose to waive his rights despite those dangers. This failure to inquire denied Duffy his Sixth Amendment right to conflict-free counsel. *See Holloway*, 435 U.S. at 484 (holding that a court's failure "to ascertain whether the risk was too remote to warrant separate counsel" deprives defendants of the right to counsel); *Johnson*, 304 U.S. at 465 ("[W]hether there is a proper waiver should be clearly determined by the trial court[.]"); *Martinez-Serna*, 166 Ariz. at 425 (requiring trial court determination of waiver "in the manner required by *Johnson*").

**¶25** As the State agrees a conflict exists here, we conclude that the failure to conduct an inquiry so thoroughly tainted the trial court proceedings that we must set aside the verdict and remand for a new trial. *Holloway*, 435 U.S. at 489 (describing the assistance of counsel as a fundamental right that is basic to a fair trial); *Glasser*, 315 U.S. at 76; *Martinez-Serna*, 166 Ariz. at 426.

## CONCLUSION

**¶26** We affirm the decision of the court of appeals, reverse Duffy's conviction and sentences, and remand to the trial court for a new trial.