NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Respondent*,

*v.*

JALLANI JEWELS STEWART, *Petitioner*.

No. 1 CA-CR 22-0454 PRPC

FILED 4-25-2023

Appeal from the Superior Court in Mohave County
No. CR-2020-00017
The Honorable Billy K. Sipe, Judge *Pro Tempore*

**REVIEW GRANTED; RELIEF GRANTED IN PART**

COUNSEL

Mohave County Attorney's Office, Kingman
By Jacob Cote
*Counsel for Respondent*

Grand Canyon Law Group, LLC, Mesa
By Angela Charlene Poliquin
*Counsel for Petitioner*

---

## MEMORANDUM DECISION

Presiding Judge Paul J. McMurdie delivered the Court's decision, in which Judge Michael J. Brown joined. Judge Michael S. Catlett filed a decision concurring in part and dissenting in part.

---

**M c M U R D I E**, Judge:

**¶1**          Jallani Jewels Stewart petitions this court to review the summary dismissal of his petition for post-conviction relief ("PCR") filed under Arizona Rule of Criminal Procedure 33. We grant review and relief in part and remand for the superior court to conduct an evidentiary hearing under Rule 33.13 consistent with this decision.

### FACTS[1] AND PROCEDURAL BACKGROUND

**¶2**          In January 2020, a grand jury indicted Stewart for transporting marijuana for sale, a Class 2 felony; forgery, a Class 4 felony; and four counts of forgery of a credit card, Class 4 felonies.

**¶3**          In the superior court, an attorney jointly represented Stewart and his codefendant. Stewart signed a conflict-of-interest waiver acknowledging that his attorney advised him of any potential conflict and consented to the joint representation.

**¶4**          The State offered Stewart a plea agreement in which he would plead guilty to possessing marijuana for sale and forgery. In return, the State would dismiss the other charges. Stewart's counsel advised Stewart that under the plea agreement, the court could sentence him "to probation, jail or 1.5 – 3 years prison on one marijuana charge and one forgery (credit card) charge. The sentences would be concurrent." But counsel's advice was wrong. Under the plea agreement, the court had complete sentencing discretion and could sentence Stewart to 3.75 years per charge without agreement on whether the sentences would run consecutively or concurrently.

---

[1]          We view the facts in the light most favorable to sustaining the judgment. *State v. Mendoza*, 248 Ariz. 6, 11, ¶ 1, n.1 (App. 2019).

¶5        At the change-of-plea hearing, the State laid the following factual basis for the guilty verdicts:

> Mr. Stewart and his codefendant were subjects of a traffic stop. The vehicle was eventually searched by officers and the search led to the discovery of ten pounds of marijuana, which is an amount consistent with the intent to distribute, and 24 forged credit cards with Jallani Stewart's name embossed on the cards.

During the change-of-plea colloquy, the court accurately stated the sentencing ranges under the plea agreement, and Stewart said he understood.

> THE COURT: If I do not place you on probation, then obviously I will sentence you to prison. If I sentence you to prison, the absolute minimum I can impose would be one year. One year is the minimum for the Class 4 felonies. Therefore, if I sentence you to prison and impose the minimum of one year for each and run those concurrently or at the same time, then one year will be your prison sentence. If I impose the maximum for each of these offenses -- which is 3.75 years -- and run those consecutive or one after another, then 7 ½ years in prison will be your sentence. Therefore, do you understand if you are sentenced to prison, the range of -- of imprisonment will be anywhere between one and 7 ½ years?
>
> THE DEFENDANT: (No response.)
>
> THE COURT: Do you understand that, Mr. Stewart?
>
> THE DEFENDANT: Yes, sir.

Neither Stewart nor his counsel questioned the plea agreement's sentencing range as stated by the court. Stewart pled guilty to the charges in the agreement.

¶6        After Stewart entered the plea agreement but before sentencing, his counsel again erroneously advised Stewart that his "possible sentence [was] anywhere from 4 year's [sic] probation with or without up to 1 year in the county jail or 1.5-3 years prison." Stewart's counsel submitted a memorandum arguing for supervised probation before sentencing. Counsel did not argue for concurrent sentences at sentencing if

the court imposed a prison sentence. The superior court sentenced Stewart to serve 2.5 years consecutively for each offense. Stewart appeared shocked by the sentence and engaged the court:

> THE DEFENDANT: So I can't withdraw it?
>
> THE COURT: Well, not right now you can't. If you want to file a motion asking to withdraw your plea agreement, that's a separate issue from today.
>
> THE DEFENDANT: For real, man? This is -- this is the best I can get?
>
> THE COURT: Yes, Mr. Stewart. Again, I've imposed the sentence that I determined was appropriate.
>
> THE DEFENDANT: Can I even request to be transferred back to North Carolina and do prison there?
>
> THE COURT: No. You have to do your prison in Arizona.
>
> THE DEFENDANT: Five years. There's nothing I can do, huh?
>
> THE COURT: Mr. Stewart, what those forms are and you'll receive a copy is your rights of review which I'll explain to you in just a few moments and your right to request the conviction be set aside and your civil rights be restored. And, again, I'll explain that to you in just a few moments.
>
> THE DEFENDANT: All right. I just -- I just need a moment. This is just -- I mean, I wasn't even -- thought I was -- I wasn't told or nothing. I'm lost. So, Your Honor, do I got to do five years in prison?

¶7            Stewart petitioned for PCR. The superior court denied the petition, concluding that Stewart failed to state a colorable claim for relief. Stewart petitioned this court for review, and we have jurisdiction under A.R.S. §§ 13-4031 and -4239 and Arizona Rule of Criminal Procedure 33.16(a)(1).

## DISCUSSION

¶8            This court will not disturb a superior court's ruling on a petition for PCR absent an abuse of discretion or error of law. *State v.*

*Gutierrez*, 229 Ariz. 573, 577, ¶ 19 (2012); *State v. Macias*, 249 Ariz. 335, 340, ¶ 16 (App. 2020). We review the court's legal conclusions *de novo*. *State v. Pandeli*, 242 Ariz. 175, 180, ¶ 4 (2017).

**¶9**      On review, Stewart first argues that his counsel provided ineffective assistance by not interviewing witnesses, moving to suppress, or arguing for concurrent sentences. He next contends that his counsel provided ineffective assistance by not requesting a hearing under *State v. Duffy*, 251 Ariz. 140 (2021), and that the superior court abused its discretion by not conducting a *Duffy* hearing *sua sponte*. Finally, Stewart argues his counsel's incorrect explanation of the plea agreement constituted ineffective assistance resulting in an involuntary plea agreement.

**A.      Stewart's Counsel Did Not Provide Ineffective Assistance by Failing to Move to Suppress, Interview Witnesses, or Argue for Concurrent Sentences at Sentencing.**

**¶10**      We agree with the superior court's conclusion that Stewart's counsel did not render ineffective assistance by not interviewing witnesses, moving to suppress, or arguing for concurrent sentences. To establish a colorable claim for ineffective assistance of counsel, the defendant must prove that counsel's performance fell below an objective standard of reasonableness as defined by prevailing professional norms, and but for counsel's errors, there is a reasonable probability that the outcome would have been different. *State v. Nash*, 143 Ariz. 392, 397–98 (1985) (citing *Strickland v. Washington*, 466 U.S. 668, 688–89 (1984)). We presume counsel's conduct falls within the wide range of reasonable professional assistance that might be considered trial strategy, and it is a defendant's burden "to show counsel's decisions were not tactical in nature." *State v. Denz*, 232 Ariz. 441, 444, ¶ 7 (App. 2013).

**¶11**      If a defendant claims counsel was ineffective by failing to investigate evidence or file pretrial motions, the defendant must establish that counsel's advice to plead guilty without having first pursued those actions "rendered that advice outside the 'range of competence demanded of attorneys in criminal cases.'" *Tollett v. Henderson*, 411 U.S. 258, 268 (1973) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). And, "[t]o establish prejudice in the context of a plea agreement, a defendant must show a reasonable probability that except for his lawyer's error he would not have waived his right to trial and entered a plea." *State v. Ysea,* 191 Ariz. 372, 377, ¶ 17 (1998), *superseded on other grounds by statute*, A.R.S. § 13-703.

¶12            Stewart first argues that his counsel should have interviewed witnesses before Stewart entered the plea agreement. But Stewart's trial counsel provided him with an analysis letter discussing the case and options before Stewart entered the plea agreement. Stewart fails to offer what other evidence his counsel could have discovered in interviews that would have changed the advice and, thereby, the outcome.

¶13            Stewart next argues that his counsel should have moved to suppress evidence arising out of the traffic stop, detention, and search ending in Stewart's arrest. To establish *Strickland*'s prejudice prong, Stewart must show a reasonable probability that a suppression motion would have succeeded. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *State v. Kasten*, 170 Ariz. 224, 228–29 (App. 1991). Stewart does not try to establish a suppression motion would have been meritorious, instead only stating there would not have been a downside to filing it. The claim fails.

¶14            Finally, Stewart argues his counsel should have advocated for concurrent sentences. Stewart's counsel submitted a pre-sentencing memorandum and argued at sentencing for supervised probation. Under the plea, the court had the discretion to impose concurrent or consecutive sentences. No objective evidence supports a claim that the trial court would have imposed concurrent sentences if counsel had made the argument. Nor need we grapple with whether the lack of argument alone established a "reasonable probability" of a different outcome because the superior court determined that consecutive sentences were appropriate and that "nothing counsel could have argued . . . would have changed the outcome." Stewart's supposition that he may have received concurrent sentences had counsel argued for them is illusory, as the actual sentencer said it would not have changed the outcome. The sentencing judge, not this court, is in the best position to determine whether the lack of argument by counsel raises a reasonable probability that it would have made a difference in the sentence. *Cf. State v. Blackman*, 201 Ariz. 527, 545, ¶ 76 (App. 2002) (The trial court is in the best position to assess the effect of an argument.). Stewart thus fails to establish the prejudice necessary to fulfill *Strickland*'s test.

## B.     A Conflict of Interest Did Not Prejudice Stewart.

### 1.     The Superior Court Did Not Abuse Its Discretion by Concluding That It Did Not Have to Conduct a *Duffy* Hearing.

¶15            Stewart argues the superior court had a duty to determine whether his conflict waiver based on joint representation was knowing, intelligent, and voluntary. He states the court should have conducted a

*Duffy* hearing, which requires "that when a trial court is advised of a potential conflict arising from an attorney's representation of a co-defendant, it must conduct an independent inquiry to confirm that the defendant's Sixth Amendment right to conflict-free counsel was waived knowingly and voluntarily." *Duffy*, 251 Ariz. at 143, ¶ 1.

¶16        A superior court need not hold a *Duffy* hearing every time an attorney represents multiple criminal defendants. *Duffy*, 251 Ariz. at 145, ¶ 14. In *Duffy*, our supreme court held that "'[a]bsent special circumstances,' trial courts may assume that multiple representation entails no conflict and that the client knowingly accepts such risks." *Id.* (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 346–47 (1980)). The superior court need only hold a *Duffy* hearing when it "knows or reasonably should know that a particular conflict exists." *Id.* (quoting *Cuyler*, 446 U.S. at 347).

¶17        When ruling on the PCR petition, the court determined that it never learned of a conflict of interest, and nothing in the record suggests otherwise. Thus, under *Duffy*, the superior court correctly concluded that it did not have a duty to hold a hearing *sua sponte*.

### 2.        Stewart Waived Any Conflict of Interest.

¶18        Stewart argues his counsel was ineffective because of an actual conflict between him and his codefendant. But whether a conflict existed between the two defendants is irrelevant because Stewart knowingly waived any potential conflict in the written conflict waiver. Nor does Stewart challenge the waiver's validity, so he has no right to relief on this ground.

### 3.        Stewart's Counsel Did Not Render Ineffective Assistance of Counsel by Not Requesting the Superior Court Hold a *Duffy* Hearing.

¶19        Stewart argues his counsel had a duty to inform the court of the alleged conflict so the court could conduct a *Duffy* hearing. By breaching this asserted duty, Stewart claims counsel rendered ineffective assistance.

¶20        Attorneys have an ethical, not constitutional, duty to inform the court of conflicts of interest among clients involved in a criminal proceeding. *State v. Jenkins*, 148 Ariz. 463, 465 (1986). *Jenkins* holds only that, when a concurrent conflict of interest among clients arises under Ethical Rule 1.7 during criminal proceedings, counsel has an ethical duty to inform the court of the conflict. *Id.* "It does not follow, however, that a violation of Rule 1.7 results in an automatic finding of ineffectiveness of counsel." *Id.*

Moreover, unlike *Jenkins*, the record supports no more than a potential conflict, and Stewart waived potential conflicts that may have existed. Stewart does not have a colorable claim for ineffective assistance of counsel on this ground because there is no constitutional violation under Rule 33.1(a).

**C.     Stewart Presented a Colorable Claim, Warranting an Evidentiary Hearing, That He Did Not Knowingly and Voluntarily Enter the Plea Agreement.**

**¶21**     Stewart argues that his counsel rendered ineffective assistance by incorrectly advising him of his potential sentences under the plea agreement, making his plea involuntary. Stewart maintains that he presented a colorable claim for relief on this ground, and the court erred by summarily dismissing it.

**¶22**     A superior court must summarily dismiss a PCR petition if all claims are precluded or if, for non-precluded claims, it finds no "material issue of fact or law exists which would entitle the defendant to relief." Ariz. R. Crim. P. 33.11(a); *see State v. Speers*, 238 Ariz. 423, 426, ¶ 9 (App. 2015). But a defendant is entitled to a hearing if a non-precluded claim for relief "is colorable." *State v. Bennett,* 213 Ariz. 562, 566, ¶ 17 (2006); Ariz. R. Crim. P. 33.13(a) ("The defendant is entitled to a hearing to determine issues of material fact."); *see State v. Evans*, 252 Ariz. 590, 598, ¶ 31 (App. 2022). A colorable claim has "the appearance of validity," *State v. Boldrey,* 176 Ariz. 378, 380 (App. 1993), one that, if the allegations are true, would have probably changed the outcome, *State v. Runningeagle,* 176 Ariz. 59, 63 (1993); *State v. Amaral*, 239 Ariz. 217, 220, ¶ 11 (2016).

**¶23**     The long-standing test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart,* 474 U.S. 52, 56 (1985) (citing *North Carolina v. Alford,* 400 U.S. 25, 31 (1970)). To show deficient performance and prejudice in the context of plea bargains, a counsel's performance is deficient if he "(1) gave erroneous advice or (2) failed to give information necessary to allow the petitioner to make an informed decision whether to accept the plea." *State v. Donald*, 198 Ariz. 406, 413, ¶ 16 (App. 2000). Counsel's erroneous legal advice prejudices a defendant when the defendant detrimentally relies on it, creating an unknowing and involuntary plea. *Id.* at 414, ¶ 20.

**¶24**     The superior court found that trial counsel was ineffective by misadvising Stewart of the potential sentences under the plea agreement.

We agree. Stewart's counsel gave the wrong advice when he repeatedly misstated the sentencing range and said the sentences would be concurrent. Without a hearing, the superior court held that although counsel's advice constituted ineffective assistance, there was no prejudice because the court corrected any misunderstanding during the plea colloquy.

¶25        In assessing a plea's voluntariness, statements made by a criminal defendant and the written plea should be given great weight. *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). "Solemn declarations [made] in open court carry a strong presumption of verity." *Id.* at 74. The plea agreement's written terms and Stewart's representations at the change-of-plea hearing correctly constitute an "imposing" barrier to collateral attack. *See id.* at 74; *see also Chizen v. Hunter*, 809 F.2d 560, 562 (9th Cir. 1986). But such evidence is not an absolute bar to a voluntariness claim of prejudice.

¶26        We are unsatisfied that the colloquy and written plea agreement corrected Stewart's misunderstanding. A defendant is entitled to relief if he presents evidence "to show that he misunderstood material terms of the plea agreement." *State v. Richardson*, 175 Ariz. 336, 339 (App. 1993); *see also State v. Diaz*, 173 Ariz. 270, 272 (1992) (A defendant may withdraw a plea upon presentation of substantial objective evidence in support of a claim that he mistakenly believed the terms of the plea agreement were more lenient than the sentence imposed by the court.). Withdrawal from a plea agreement is "allowed only when it may fairly be said that the deal was not voluntary because defendant lacked information of true importance in the decision-making process." *State v. Crowder*, 155 Ariz. 477, 482 (1987), *overruled in part on other grounds by E.H. v. Slayton*, 249 Ariz. 248 (2020). Here, Stewart lacked crucial information—the correct sentencing range. His attorney's statements were not merely incorrect predictions of Stewart's likely sentence but inaccurate assertions of the actual range of possible penalties. *Cf. Chizen*, 809 F.2d at 561–62 (Ninth Circuit granted relief when petitioner did "not allege[] merely that his counsel erroneously *predicted* the favorable consequences of a guilty plea," but that the plea "was induced by his counsel's misrepresentations as to what his sentence *in fact* would be.").

¶27        Objectively, Stewart proved that his counsel gave him erroneous advice about the consequences of pleading guilty. If Stewart relied on his counsel's advice and believed he would be sentenced as his counsel described despite the court's statements during the colloquy, then his plea was involuntary, and prejudice exists. The answer is a factual determination that must be resolved by evaluating Stewart's credibility. *See*

*Lee v. Lee*, 133 Ariz. 118, 123 (App. 1982) (Determining witness credibility and resolving conflicting evidence are functions for the superior court.). As a result, we find a colorable claim for relief and remand for an evidentiary hearing under Rule 33.13 for the court to determine Stewart's credibility in claiming that he erroneously relied on counsel's advice.

**CONCLUSION**

**¶28**        We grant review and relief in part. We remand to the superior court for an evidentiary hearing under Rule 33.13.

**C A T L E T T,** Judge, concurring in part and dissenting in part:

**¶29**        I concur in paragraphs 15 through 20 of the majority decision. I dissent from paragraphs 21 through 27 because Petitioner Jallani Jewels Stewart ("Stewart") has not presented a colorable claim of ineffective assistance of counsel stemming from his counsel's statements about the potential sentences under Stewart's plea agreement.  Thus, the superior court did not clearly abuse its discretion in declining to hold an evidentiary hearing on Stewart's ineffective assistance of counsel claim.

**¶30**        "We will not disturb a trial court's ruling on a petition for post-conviction relief absent a clear abuse of discretion." *State v. Ainsworth*, 250 Ariz. 457, 458 ¶ 1 (App. 2021) (quoting *State v. Swoopes*, 216 Ariz. 390, 393 ¶ 4 (App. 2007)).  Rule 33 sets forth the grounds, and establishes procedures, for post-conviction relief "if the defendant pled guilty or no contest to a criminal offense." Ariz. R. Crim. P. 33.1.  Among the grounds for relief in Rule 33.1, a defendant is entitled to relief when "the defendant's plea or admission to a probation violation was obtained, or the sentence was imposed, in violation of the United States or Arizona constitutions." The superior court must summarily dismiss a petition for post-conviction relief after a guilty plea if "the court determines that no remaining claim presents a material issue of fact or law that would entitle the defendant to relief under this rule."  Ariz. R. Crim. P. 33.11(a).

**¶31**        Under *Strickland v. Washington*, a criminal defendant must show that counsel rendered deficient performance and resulting prejudice. 466 U.S. 668, 687 (1984).  I agree with the majority decision that the superior court did not clearly abuse its discretion in concluding that Stewart has a colorable claim that trial counsel provided deficient performance.  I

disagree, however, that the superior court clearly abused its discretion by concluding that Stewart has not adequately shown prejudice.

**¶32**        The majority decision says that a colorable claim for post-conviction relief is one that "if the allegations are true, might have changed the outcome." Maj. Dec. ¶ 22 (quoting *State v. Runningeagle*, 176 Ariz. 59, 63 (1993) and *State v. Amaral*, 239 Ariz. 217, 220, ¶ 11 (2016)). Under Rule 33[2], to determine whether a petitioner has a colorable claim of prejudice resulting from ineffective assistance of counsel after a plea agreement, a court should instead ask the following: If the defendant's allegations are taken as true, do they show "a reasonable probability that, but for counsel's errors, he would not have [pled] guilty and would have insisted on going to trial?" *See State v. Bowers*, 192 Ariz. 419, 424 ¶ 19 (App. 1998).

**¶33**        A defendant seeking post-conviction relief based on a claim that a plea agreement was not entered voluntarily and intelligently because of ineffective assistance of counsel carries a heavy burden. The majority decision says that "[c]ounsel's erroneous legal advice prejudices a defendant when the defendant detrimentally relies on it, creating an unknowing and involuntary plea." Maj. Dec. ¶ 23. But only a particular type of detrimental reliance is sufficient. The defendant must show "a reasonable probability that except for his lawyer's error he would not have waived his right to trial." *Bowers*, 192 Ariz. at 424 ¶ 21. And the claim "must be accompanied by an allegation of specific facts which would allow a court to meaningfully assess why that deficiency was material to the plea decision." *Id.* at 425 ¶ 25.

**¶34**        The Arizona Rules of Criminal Procedure state that "[t]he court may allow a defendant to withdraw a plea of guilty or no contest if it is necessary to correct a manifest injustice." Ariz. R. Crim. P. 17.5. Those Rules also contain detailed procedures for superior courts to follow when advising criminal defendants of the consequences of a guilty plea and in determining whether a plea is entered voluntarily and intelligently. *See* Ariz. R. Crim P. 17.2, 17.3. To ensure that plea agreements remain final, statements made during a plea hearing "carry a strong presumption of verity, and constitute a formidable barrier in a subsequent challenge to the validity of the plea." *State v. Leyva*, 241 Ariz. 521, 525 ¶ 12 (App. 2017) (internal quotation marks and citation omitted).

---

[2]        *Runningeagle* and *Amaral* both involved petitions filed under Rule 32, not Rule 33.

¶35        Courts are rightly reticent to grant post-conviction relief from a plea agreement when the defendant's claim (like Stewart's) is that counsel wrongly predicted the sentence the trial court would eventually impose after the agreement.  For example, in *State v. Short*, this Court concluded that when the sentencing court accurately informs a defendant of the sentencing range, incorrect sentencing information previously provided cannot render the plea invalid.  23 Ariz. App. 59, 60–61 (1975).  In *State v. Sutton*, we observed that "a mistake of a few years in advice about the length of what would otherwise be a long term would not constitute ineffectiveness of counsel."  143 Ariz. 234, 237 (App. 1984).  And the Ninth Circuit has repeatedly held that incorrect sentencing predictions are not grounds for prejudice.  *See, e.g.*, *Womack v. Del Papa*, 497 F.3d 998, 1003 (9th Cir. 2007) (finding that the trial court informed the defendant of the potential sentence and thus the defendant could not demonstrate prejudice from his attorney's predictions); *Doganiere v. United States*, 914 F.2d 165, 168 (9th Cir. 1990) (holding that the petitioner "suffered no prejudice from his attorney's prediction because, prior to accepting his guilty plea, the court explained that the discretion as to what the sentence would be remained entirely with the court").

¶36        On the record before us, Stewart has not presented a colorable claim of prejudice.  *Sutton*, 143 Ariz. at 237 ("Each case must depend largely on its own facts.").  On July 16, 2020, Stewart's counsel sent Stewart a detailed letter to "update you further on the status of your case and give you my thoughts on your options."  The letter first informed Stewart of the potential prison time connected to the crimes for which he was charged and then assessed the likelihood of successfully challenging the legality of the actions law enforcement took leading to Stewart's arrest.  The letter concluded that, because of the significant evidence that Stewart had committed the crimes for which he was charged, rejecting a guilty plea and proceeding to trial was risky in light of the potential prison sentence.  The letter clearly and correctly explained to Stewart that "[t]he exact number of years between 4-10, 6-18 or 14-28 years would be decided by the judge."

¶37        The letter then discussed the merits of the prosecution's plea offer.  The letter explained that "the prosecutor is offering not to use your priors to increase your sentences."  With respect to the potential sentence under the agreement, the letter advised that Stewart "can be sentenced to probation, jail or 1.5 – 3 years prison on one marijuana charge."  The letter then erroneously stated, "The sentences would be concurrent."  Counsel concluded by emphasizing that "[t]he final decision whether to risk trial or accept the plea is yours and we can discuss these options in greater detail."

¶38 Two months later, on September 29, 2020, Stewart signed a plea agreement. The agreement listed the two charges to which Stewart would plead guilty and the presumptive term of imprisonment (2.5 years) for each. The agreement also made abundantly clear that Stewart could receive a sentence of supervised probation or prison. Regarding other sentencing terms, the agreement stated in bold, capital letters, "**ALL OTHER TERMS AT THE JUDGE'S DISCRETION**."

¶39 The superior court held a change of plea hearing on October 2, 2020. Consistent with Rule 17.3, the superior court took steps to determine whether "the defendant's plea is voluntary and not the result of force, threats or promises (other than that which is included in the plea agreement)." Ariz. R. Crim. P. 17.3(a)(2). After obtaining confirmation that Stewart understood the range of sentencing for the two charges to which he was pleading guilty, the superior court and Stewart had the following exchange:

> THE COURT: . . . If I impose the maximum for each of these offenses – which is 3.75 years – and run those consecutive or one after another, then 7 1/2 years in prison will be your sentence.
> Therefore, do you understand if you are sentenced to prison, the range of – of imprisonment will be anywhere between one and 7 1/2 years?
>
> STEWART: (No Response)
>
> THE COURT: Do you understand that, Mr. Stewart?
>
> STEWART: Yes, sir.

¶40 Stewart further assured the superior court that he had read the plea agreement; his counsel had explained the agreement to him; he believed he understood the agreement; the agreement contained everything he had agreed to with the prosecution; he agreed with all of the terms contained in the agreement; he had no questions for the court or prosecution about the agreement; and he was agreeing to plead guilty on his own free will. The superior court asked Stewart "did anyone make any promises to you to convince you to plead guilty other than the promises contained in the plea agreement?" Stewart responded, "No, sir." Stewart then pled guilty to the two charges.

¶41        The superior court scheduled sentencing for January 12, 2020. One day prior to that, Stewart's counsel sent an email to Stewart encouraging him to obtain an email from his counsel in North Carolina about pending criminal charges there. Stewart's counsel then explained that, without a plea agreement, Stewart would "have to go to prison as a repeat offender and be sentenced to a mandatory 8-12 years." Stewart's counsel explained that "[i]nstead you are being sentenced as a first time offender which makes your possible sentence anywhere from 4 year's probation with or without up to 1 year in the county jail or 1.5-3 years prison." Counsel again emphasized the sentencing discretion the superior court possessed: "The sentence will be up to the judge but the judge can still consider your prior or pending criminal history when deciding your sentence."

¶42        The next day, the superior court, finding some aggravating factors (including Stewart's significant prior criminal history) and some mitigating factors, sentenced Stewart to the presumptive term of two-and-one-half years in prison for each count. The superior court ordered the sentences to run consecutively, explaining that "I do believe that consecutive sentences are appropriate since these are separate offenses."

¶43        Stewart immediately expressed shock and dismay that he had received prison time. Stewart expressed remorse for his actions and emphasized that he has a family he needs to support. Presumably referring to his plea agreement, Stewart then asked, "So I can't withdraw it?" He also said, "There's nothing I can do, huh?" Finally, he asked, "So Your Honor, do I got to do five years in prison?"

¶44        Stewart claims prejudice because "[w]e cannot be sure what [Stewart] would have done if he understood that in fact he faced a 7.5 year sentence under the plea, but there is a reasonable probability that he would have exercised his right to trial." For a few reasons, I conclude that Stewart has not presented a colorable claim of prejudice. To begin, trial counsel was wrong when he informed Stewart in July 2020, by letter, that the sentences on the two charges would be concurrent. But that correspondence cannot establish prejudice in light of (1) the two-month passage of time between the letter and Stewart's later execution of the plea agreement, (2) the language of the plea agreement clearly stating that nearly all sentencing terms would be at the superior court's discretion, (3) the superior court's compliance with the requirements of Rule 17.3 during the change of plea hearing, and (4) Stewart's various acknowledgements about the plea agreement during the change of plea hearing. The superior court clearly informed Stewart that the sentences for the two counts could run

consecutively and Stewart still expressed a desire to plead guilty. We risk undermining Rule 17.3 and the finality of plea agreements when we find a colorable claim of prejudice based on statements from counsel that directly contradict terms in plea agreements and disclosures and affirmations made during plea colloquies. *See Leyva*, 241 Ariz. at 525 ¶ 12.

**¶45** Similarly, nothing that happened after the change of plea hearing supports prejudice. Stewart and the majority decision rely on an ambiguous statement about the potential sentence in an email from counsel sent the day before sentencing. In that email, trial counsel states that "you are being sentenced as a first time offender which makes your possible sentence anywhere from 4 year's probation with or without up to 1 year in the county jail or 1.5-3 years prison." The statement does not make clear whether counsel is describing the potential sentence for each count or for both. The statement does not address whether sentences for each count would be consecutive or concurrent, and the statement clearly does not *promise* that the sentences will run concurrently. Perhaps most importantly, Stewart cannot show that anything in the email caused him to involuntarily enter the plea agreement or plead guilty. By the time Stewart received the email, he had already made the decision to plead guilty, executed the plea agreement, and entered his guilty plea. *See Bowers*, 192 Ariz. at 425 ¶ 25 (a PCR petition "must be accompanied by an allegation of specific facts which would allow a court to meaningfully assess why that deficiency was material *to the plea decision*" (emphasis added)). Thus, counsel's email, standing alone, is insufficient to warrant an evidentiary hearing.

**¶46** Even if the email had unambiguously promised concurrent sentences, Stewart has not established a reasonable probability that he would have withdrawn from the plea had he been correctly advised. Stewart was clearly surprised to receive prison time and even asked the trial court if he could "withdraw it," presumably meaning his guilty plea. The trial court responded that Stewart could "file a motion asking to withdraw your plea agreement." Tellingly, Stewart never did so. Moreover, in connection with his post-conviction petition, Stewart has not averred that he would have withdrawn from his plea agreement had he known that the two sentences could run consecutively. Stewart has not submitted, for example, a declaration explaining how he would have proceeded differently and why. Instead, Stewart's petition for review says that "[w]e cannot be sure what [Stewart] would have done if he understood that in fact he faced a 7.5 year sentence under the plea." This does not qualify as the requisite "allegation of specific facts" allowing us "to meaningfully assess" prejudice. *See Bowers*, 192 Ariz. at 425 ¶ 25.

¶47        It is highly unlikely that Stewart would have proceeded to trial.  Considering his extensive prior criminal history, the multiple other charges brought against him, and the strength of the State's evidence, Stewart faced likely conviction and decades in prison had he not pled guilty.  Instead, under the plea agreement, he faced a maximum of seven years' imprisonment, and he ultimately received five.

¶48        The majority decision concludes that Stewart has presented a colorable claim of prejudice and remands for an evidentiary hearing.  At that hearing, Stewart "will bear the burden of proving his assertions of deficient performance by counsel and the resultant prejudice to his decision to plead guilty."  *Bowers*, 192 Ariz. at 426 ¶ 30.  In considering Stewart's arguments, the superior court "may weigh factors . . . such as his likelihood of success at trial and the fact that the plea agreement limited [Stewart's] exposure regarding offenses that were to be dismissed or not filed."  *Id.* And the superior court "may conclude that [Stewart] entered his plea in order to reduce his sentence exposure in the face of strong evidence against him, rather than because of counsel's alleged misadvise regarding the nature of" his potential sentences.  *Id.* at 426–27 ¶ 30.

¶49        Because, however, I conclude Stewart has not presented a colorable claim of prejudice justifying an evidentiary hearing, I would affirm without remand, and I respectfully dissent from the majority decision's failure to do so.

