NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

STATE OF ARIZONA, *Respondent*,

*v.*

ROGER ALLEN SHARP, *Petitioner*.

No. 1 CA-CR 23-0160 PRPC
FILED 10-19-2023

Petition for Review from the Superior Court in Maricopa County
No. CR2014-100040-002
The Honorable Joseph Kreamer, Judge

**REVIEW GRANTED; RELIEF DENIED**

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Faith Cheree Klepper
*Counsel for Respondent*

Roger Allen Sharp, Tucson
*Petitioner*

**MEMORANDUM DECISION**

Judge Paul J. McMurdie delivered the Court's decision, in which Presiding
Judge D. Steven Williams and Judge Samuel A. Thumma joined.

**M c M U R D I E**, Judge:

¶1 Roger Allen Sharp seeks review of the superior court's order denying his petition for post-conviction relief ("PCR") filed under Arizona Rule of Criminal Procedure ("Rule") 33. We grant review but deny relief.

## FACTS AND PROCEDURAL BACKGROUND

¶2 In December 2013, officers responded to an armed robbery call. Two victims reported being robbed at gunpoint. The suspects fled the scene in a Chevy Impala. An emergency call broadcast was made, and Officer Smith[1] located the Impala in traffic. Smith chased the Impala until the Impala collided with Paul Griffin's truck.

¶3 After the crash, one of the suspects fled. The other suspect, later identified as Sharp, exited the driver's side of the Impala. Sharp and Officer Smith engaged in a physical struggle. Griffin intervened, trying to tackle Sharp. During the struggle, Sharp "gain[ed] full control of Officer [Smith's] service weapon." Sharp fired the weapon, wounding Smith and Griffin. Sharp fled and entered a residential neighborhood. He kicked in the front door of a residence, and the homeowner alerted the police. Police arrested Sharp in a resident's backyard.

¶4 In a post-arrest interview, Sharp acknowledged his participation in the armed robbery and said he accidentally shot Smith and Griffin. In January 2014, the State charged Sharp with four counts of aggravated assault, two counts of armed robbery, two counts of attempt to commit first-degree murder, and one count each of conspiracy to commit armed robbery, misconduct involving weapons, unlawful flight from law enforcement, resisting arrest, and criminal trespass.

¶5 In May 2014, the police interviewed Griffin. He could not remember significant details from the shooting. Griffin "remembered being in a scuffle with somebody, but did not remember any specifics nor did he remember how big the scuffle was." The State disclosed the police's interview summary report to Sharp's counsel in August 2014 and the interview recording in October 2014.

¶6 Consistent with its policy not to offer a plea without Division Chief approval for any case involving a firearm pointed or discharged at an officer in his or her official capacity, the State did not make a plea offer. In

---

[1] We use pseudonyms to protect the victims' identities.

any event, Sharp pled guilty to all charges in November 2014, admitting to the facts underlying each count. Relevant here, Sharp admitted that he "discharged a weapon striking Officer [Smith]," Griffin "was also wounded by the discharge of the gun that Mr. Sharp had gotten ahold of," and he knew or should have known that discharging the weapon was likely to cause the deaths of Smith and Griffin. Sharp also admitted he was on felony probation during the offenses and had two prior felony convictions. In early 2015, the court sentenced Sharp to concurrent and consecutive prison terms totaling 66.5 years.

¶7 While serving his prison sentence, Sharp learned that Griffin sued the City of Phoenix and the Phoenix Police Department (collectively, "the City") in December 2014 for alleged negligence during the shooting.[2] Griffin had submitted a notice of claim with the City in June 2014 before Sharp pled guilty and a civil complaint afterward. Griffin's claim notice stated in part, "Whether it was Officer [Smith] or Mr. Sharp who shot [Griffin]," the City's gross negligence caused Griffin's injuries. During the civil suit's discovery, Griffin objected to a request for admission that Sharp shot him, stating this was information he was "unaware of." Griffin also said during discovery that he did not know who shot him and could not admit that it was Sharp.

¶8 Sharp filed his PCR notice. The court dismissed his notice as untimely but later "reinstated [it] as to his Rule 33.1(e) claim only." In his PCR petition, Sharp asserted that the civil suit and Griffin's statements in the suit contained newly discovered material facts that would have altered his sentence or his decision to plead guilty. Sharp submitted an affidavit stating that when he pled guilty, he was unaware that Griffin did not know who shot him. He also said that "no one ever told [him] about the lawsuit" against the City.

¶9 The superior court conducted a prehearing conference to determine whether to hold an evidentiary hearing on the PCR petition. During the argument, Sharp's counsel confirmed that the alleged newly discovered evidence was "[Griffin's] affirmative expression of doubt whether Sharp was the shooter, and [Griffin's] claim that it may have been [Smith,] not Defendant, who shot [Griffin]."

¶10 The court dismissed the PCR claim, reasoning that Griffin's statements in his civil suit against the City were not material. It explained

---

[2] The civil suit settled in 2018.

that Griffin's inability to identify the shooter was "nothing new" because Sharp knew that Griffin could not remember details from the shooting based on the police reports. Thus, because Griffin's statements during the civil suit were not newly discovered material facts, Sharp failed to establish a colorable claim for relief and was not entitled to an evidentiary hearing.

**¶11**  Sharp petitioned for review. We have jurisdiction under A.R.S. § 13-4239 and Rule 33.16(a)(1).

## DISCUSSION

**¶12**  We review the superior court's dismissal of a PCR for abuse of discretion. *State v. Roseberry*, 237 Ariz. 507, 508, ¶ 7 (2015). We will affirm the superior court's decision "if it is legally correct for any reason." *Id.*

**¶13**  To present a colorable claim of newly discovered evidence, the defendant must show that: 1) he or she discovered facts that existed but were not discovered until after sentencing, 2) the defendant exercised due diligence to discover the facts, and 3) the facts are material, not cumulative, and not impeachment evidence, "unless the impeachment evidence substantially undermines testimony that was of such critical significance that the impeachment evidence probably would have changed the judgment or sentence." Ariz. R. Crim. P. 33.1(e)(1)-(3). "[E]vidence is material if it is relevant and goes to substantial matters in dispute or has a legitimate and effective influence or bearing on the decision of the case." *State v. Acuna Valenzuela*, 245 Ariz. 197, 215, ¶ 58 (2018) (quoting *State v. Orantez*, 183 Ariz. 218, 221-22 (1995)).

**¶14**  A defendant is entitled to an evidentiary hearing if he or she "alleges facts which, if true, would *probably* have changed the verdict or sentence." *State v. Amaral*, 239 Ariz. 217, 219, 220, ¶¶ 9, 11 (2016). If there are no material factual disputes, the superior court need not hold an evidentiary hearing, and "[i]t may simply determine whether the undisputed facts probably would have changed the verdict or sentence." *Id.* at 220, ¶ 12.

**¶15**  Sharp argues the court erred by denying him an evidentiary hearing. Sharp seeks to question Officer Smith about his knowledge of the civil suit and "asses[s] his credibility." Before the superior court, Sharp theorized the civil suit "hindered the State's willingness to engage in meaningful plea negotiations because allowing Sharp to plead guilty to anything other than an intentional, premedi[t]ated homicide would have exposed the City . . . to greater civil liability for [Griffin's] injuries." Sharp also suggested the State "deliberately concealed" Griffin's lawsuit. Here,

Sharp asserts the City and the State conspired to cover up police misconduct by tricking Sharp into pleading guilty. And Sharp argues that, had he known about the civil suit, he could have cross-examined Officer Smith about his knowledge and role in the conspiracy.

**¶16** Impeachment evidence is insufficient for a colorable Rule 33.1(e) claim unless the evidence undermines testimony so significant that it probably would have changed the judgment or sentence. *See* Ariz. R. Crim. P. 33.1(e)(3). Sharp did not offer facts suggesting that the State declined to offer a plea to shield the City from liability. Nor did he offer facts suggesting the State intentionally suppressed knowledge of the civil suit. And the State presented evidence of its policy not to offer plea deals without Division Chief approval in cases involving a firearm discharged at an officer. Sharp failed to allege facts which, if true, would show that Officer Smith's knowledge of the civil suit probably would have changed Sharp's verdict or sentence. *See Amaral*, 239 Ariz. at 220, ¶ 11.

**¶17** Sharp also disputes the superior court's finding that Griffin's inability to identify the shooter was not material. The superior court found that Sharp knew Griffin did not remember what happened during the shooting. In August and October 2014, before Sharp's plea, the State disclosed Griffin's police interview, where Griffin stated he could not remember any details about the shooting. Sharp did not dispute the State's disclosure. And as the superior court explained, "[i]f [Griffin] couldn't remember what happened, by definition he did not know who shot him." Griffin's statements during the civil suit highlighting his inability to identify the shooter are not newly discovered material facts. *See* Ariz. R. Crim. P. 33.1(e). Thus, the superior court did not err by denying Sharp's request for an evidentiary hearing and dismissing the PCR petition.

**¶18** Finally, Sharp argues the State and the superior court committed fraud and misconduct by intentionally suppressing knowledge of the civil suit. Sharp seeks habeas corpus relief and asserts the State violated his due process rights. Because these claims are outside the scope of Rule 33.1(e), we decline to address them. *See State v. Manning*, 143 Ariz.

139, 141 (App. 1984) (On review of a PCR petition, this court lacks jurisdiction to assess claims not "within the provisions of the rule.").[3]

## CONCLUSION

**¶19**     We grant review but deny relief.



AMY M. WOOD • Clerk of the Court
FILED:     AA

---

[3]     The purpose of habeas corpus is to release one who is unlawfully detained. *Sims v. Ryan*, 181 Ariz. 330, 332 (App. 1995); A.R.S. § 13-4131; *see also* Ariz. R. Crim. P. 33.1(d) (A defendant may claim in a PCR petition that he "continues to be or will continue to be in custody after his or her sentence expired."). Due process violations are raised under Rule 33.1(a) and are subject to preclusion if not timely raised. *See State v. Reed*, 252 Ariz. 236, 238, ¶ 10 (App. 2021) ("Claims asserting a constitutional basis must be filed within 90 days of sentencing" under Rule 33.4(b)(3)(A).).